# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-3600

_____

James M. Robinette,                        *
                                           *
              Appellee,                     *
                                           *    Appeal from the
       v.                                   *    United States Tax Court.
                                           *
Commissioner of the Internal                *
Revenue Service,                            *
                                           *
              Appellant.                     *

_____

Submitted: June 22, 2005
Filed: March 8, 2006

_____

Before ARNOLD, McMILLIAN,[1] and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

After James M. Robinette was found to be in default of an offer-in-compromise, the Internal Revenue Service ("IRS") imposed a levy for the amount remaining due on his original compromised liability. *See* 26 U.S.C. §§ 6330, 6331. Robinette filed a petition for review in the United States Tax Court, and the Tax Court agreed with Robinette that the IRS had abused its discretion in imposing the levy. The Commissioner of the IRS appeals, and we reverse.

_____

[1]The Honorable Theodore McMillian died on January 18, 2006. This opinion is filed by the remaining members of the panel pursuant to 8th Circuit Rule 47E.

I.

Between 1983 and 1991, Robinette failed to pay his federal income taxes. By May 31, 1993, the balance due on his liabilities, including interest and statutory additions, was $989,475.89. At that time, Robinette also was responsible for a liability of $102,030.54 that had accumulated when his medical clinic failed to pay trust fund taxes during portions of 1988, 1989, and 1990. These liabilities combined to leave Robinette owing $1,091,506.43.

On June 1, 1994, Robinette sought to settle his liabilities through an offer-in-compromise. Pursuant to the offer, Robinette submitted $1,000, promised to pay an additional $99,000 within 60 days of receiving notice of the IRS's acceptance of his offer, and agreed to several additional terms and conditions. Among these conditions was a promise that "I/we will comply with all provisions of the Internal Revenue Code relating to filing my/our returns and paying my/our required taxes for five (5) years from the date IRS accepts the offer." (Ex. 2-J at ¶ (7)(d)). The offer also acknowledged that Robinette understood that he would "remain responsible for the full amount of the tax liability unless and until IRS accepts the offer in writing and I/we have met all the terms and conditions of the offer," and that the tax he was offering to compromise "will remain a tax liability until I/we meet all the terms and conditions of this offer." (Ex. 2-J at ¶ (7)(j), (k)). The offer further recognized the IRS's power, if Robinette failed to meet the terms of the offer, to "file suit or levy to collect the original amount of the tax liability, without further notice of any kind." (Ex. 2-J at ¶ (7)(o)).

Robinette also proposed a collateral agreement, under which he agreed to pay an additional percentage tax on any income over $100,000 for the years 1996 to 2000 and promised to provide a sworn statement of his previous year's income each year by April 15. On October 31, 1995, the IRS accepted this offer-in-compromise, together with the collateral agreement.

Robinette filed his tax returns for 1996 and 1997 in a timely manner, after receiving extensions of time to file in October. Except for a delay in providing statements of annual income for 1996, 1997, and 1998, he complied with the terms of his offer-in-compromise. On February 21, 2000, however, the IRS wrote to notify Robinette that it had not received his 1998 tax return and to request that he immediately file the late return. On March 17, 2000, the IRS again notified Robinette by letter that it still had not received his tax return, and that if he failed to send the return within 15 days, the matter would be referred for consideration of whether his offer-in-compromise was in default. A similar letter was sent on April 17, 2000. On July 13, 2000, the IRS sent a letter notifying Robinette that no return had been filed, that the failure to file violated the terms of the agreement, and that the offer was in default.

On September 28, 2000, the IRS sent Robinette a notice of its intent to impose a levy to collect the full original liability (minus the amount already paid under the offer-in-compromise), and of his rights to a hearing before the levy, as required under 26 U.S.C. § 6330. Robinette responded with a timely request for a collection due process hearing, in which he noted that he was disputing whether he owed the amounts being levied. The collection due process proceedings were conducted informally and consisted of a series of telephone calls and correspondence between an IRS appeals officer and Robinette's accountant/attorney, Douglas Coy. During these conversations, Coy claimed that he mailed Robinette's 1998 return on October 15, 1999, which, pursuant to extensions Robinette had received, was the date on which the return was due. Coy provided a copy of the return, which the IRS received and processed as an original return on February 16, 2001.

Despite Coy's insistence that he mailed the 1998 return by first-class mail with several other clients' returns shortly before midnight on October 16, 1999, the appeals officer determined that the return had not been timely filed, and he recommended that the levy be imposed. The appeals officer noted that Robinette had not complied with

several requests to file the return before the offer was defaulted, and that Robinette had not proposed a new offer-in-compromise or any other alternative to collection. Consistent with this recommendation, the IRS Office of Appeals issued a determination that the notice of intent to levy was appropriate.

Robinette appealed to the Tax Court pursuant to § 6330(d)(1), arguing that the appeals officer had abused his discretion by proceeding with the collection. The Tax Court held a trial and agreed with Robinette. *Robinette v. Comm'r,* 123 T.C. 85 (2004). The Tax Court found that Robinette had not filed his 1998 return in a timely manner, but that his failure to do so was not material to his offer-in-compromise. Since the breach was immaterial, the Tax Court reasoned, the offer should not have been defaulted, and the decision to proceed with collection was an abuse of discretion. *Id.* at 112. The case generated five concurring opinions, a dissenting opinion of two judges, and a third dissenting vote.

## II.

Prior to 1998, the IRS was permitted to collect a tax liability by levy against a taxpayer's property, without prior opportunity for a hearing or due process, so long as there were adequate post-deprivation remedies. *See Phillips v. Comm'r*, 283 U.S. 589, 595-97 (1931). Apparently concerned about potential abuses of this administrative authority to seize a taxpayer's property, Congress created an administrative proceeding, commonly known as a "collection due process hearing," in the Internal Revenue Service Restructuring and Reform Act of 1998. The applicable statute requires notice to the taxpayer of a right to a hearing before a levy is made, 26 U.S.C. § 6330(a), and guarantees the right to a fair hearing before an impartial officer from the Internal Revenue Service Office of Appeals. *Id*. § 6330(b). In the hearing, the taxpayer may raise "any relevant issue relating to unpaid tax or the proposed levy," including "challenges to the appropriateness of collection actions," and "offers of collection alternatives, which may include . . . an offer-in-compromise."

*Id*. § 6330(c)(2)(A).  The appeals officer then must consider whether any proposed collection action "balances the need for the efficient collection of taxes with the legitimate concern of the person that any collection action be no more intrusive than necessary."  26 U.S.C. § 6330(c)(3)(C).

The statute also affords a right of judicial review of the determination by the impartial hearing officer, in either the Tax Court or a United States District Court, depending on whether the Tax Court has jurisdiction. *Id*. § 6330(d)(1).  Judicial review in this case was available in the Tax Court because the levy related to Robinette's underlying liability for unpaid income tax.  *See* 26 C.F.R. § 301.6330-1(f)(2) (Q-F3, A-F3).

Consistent with the legislative history of the Act, the parties agree that the Tax Court reviews the decision of an IRS hearing officer under an "abuse of discretion" standard of review.  *See* H.R. Conf. Rep. No. 105-599, at 266 (1998) ("Where the validity of the tax liability is not properly part of the appeal, the taxpayer may challenge the determination of the appeals officers for abuse of discretion.  In such cases, the appeals officer's determination as to the appropriateness of collection activity will be reviewed using an abuse of discretion standard of review.").  Two of our sister circuits have concluded that "in providing for CDP hearings on what is ordinarily a scant record, Congress 'must have been contemplating a more deferential review of these tax appeals than of more formal agency decisions.'" *Olsen v. United States*, 414 F.3d 144, 150 (1st Cir. 2005) (quoting *Living Care Alternatives of Utica, Inc., v. United States*, 411 F.3d 621, 625 (6th Cir. 2005)).  We see merit in the observation of these courts that Congress likely contemplated review for "'a clear abuse of discretion in the sense of clear taxpayer abuse and unfairness by the IRS,'" lest the judiciary become involved on a daily basis with tax enforcement details that

Congress intended to leave with the IRS.  *Id.*, 414 F.3d at 150 (quoting *Living Care, 411 F.3d at 631).*[2]

There is a substantial dispute in this case, however, concerning the scope of the record on which this deferential judicial review should take place.  Robinette argues, and a majority of the Tax Court held, that the Tax Court may receive new evidence in the course of reviewing whether an appeals officer abused his discretion in denying relief during a collection due process hearing.  Indeed, a significant portion of the Tax Court's analysis that the appeals officer abused his discretion in this case was based on evidence not presented during the administrative appeal.  The Commissioner contends this was error, and that consistent with general principles of administrative law and the Administrative Procedure Act ("APA"), judicial review of the agency's decision should be limited to the administrative record developed at the hearing before the appeals officer.

It is a basic principle of administrative law that review of administrative decisions is "ordinarily limited to consideration of the decision of the agency . . . and of the evidence on which it was based."  *United States v. Carlo Bianchi & Co.,* 373 U.S. 709, 714-15 (1963).  Outside the context of the APA, the Supreme Court has held that where Congress simply provides for judicial review, without setting forth the standards to be used or the procedures to be followed, "consideration is to be confined to the administrative record," and "no de novo proceeding may be held."  *Id.* at 715.  In reviewing agency action under the "abuse of discretion" standard specified in the

---

[2]Robinette does argue that the Tax Court should have applied *de novo* review to his case because his challenge to the levy should be construed as a challenge to the underlying liability.  His asserted challenge to the underlying liability, however, was merely a claim that his 1998 return was timely filed, such that the original offer-in-compromise should not have been defaulted.  (Tr. at  49).  The Tax Court disagreed, finding that Robinette "has not proven that he filed his return on October 15, 1999," and that the "return was late filed."  123 T.C. at 106-07.  This conclusion accords with the determination of the appeals officer, and Robinette does not now dispute it.

APA, 5 U.S.C. § 706(2)(A), "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973) (per curiam).

Robinette's contention, therefore, is that the review of decisions by an IRS appeals officer under § 6330 should be exempt from both the statutory framework of the APA and from general principles of administrative law that limit the scope of judicial review to the administrative record.[3] We are not persuaded that Congress endorsed such a departure when it authorized pre-deprivation judicial review of IRS levy activity in the Tax Court and the United States District Courts. The APA itself says that a subsequently enacted statute "may not be held to supersede or modify" the judicial review provisions of 5 U.S.C. § 706, "except to the extent that it does so expressly." 5 U.S.C. § 559. Whether or not the Congress of 1946 may bind the Congress of 1998 to make an "express" statement permitting the Tax Court to consider evidence outside the administrative record, *see Lockhart v. United States*, 126 S. Ct. 699, 703 (2005) (Scalia, J., concurring), the Supreme Court has discerned in the APA "[a] statutory intent that legislative departure from the norm must be clear," *Dickinson v. Zurko*, 527 U.S. 150, 155 (1999), and held that exemptions from the APA are "not lightly to be presumed." *Marcello v. Bonds*, 349 U.S. 302, 310 (1955).

Nothing in the text or history of the Restructuring and Reform Act of 1998 clearly indicates an intent by Congress to permit trials *de novo* in the Tax Court when that court reviews decisions of IRS appeals officers under § 6330. If anything, the available evidence suggests the opposite. The agreed-upon standard of review itself

_____

[3]Robinette also argues that the Commissioner waived his objection to the consideration of evidence outside the record by failing to object to the introduction of non-record evidence during the trial. In fact, the Tax Court record indicates that the Commissioner raised this argument in a pretrial memorandum, through an objection at the start of the trial, and in a motion to strike on which the court requested written briefs. (Doc. 26, at 4; Tr. at 4-5, 127-30).

implies that review is limited to the administrative record, for as the Tax Court seemingly recognized in another case, it would be incongruous to hold that review is limited to determining whether an appeals officer "abused his discretion," but also to conclude that the appeals officer committed such an "abuse" by failing to weigh information that was never even presented to him. *See Magana v. Comm'r*, 118 T.C. 488, 493 (2002) ("[I]t would be anomalous and improper for us to conclude that respondent's Appeals Office abused its discretion under section 6330(c)(3) in failing to grant relief, or in failing to consider arguments, issues, or other matter not raised by taxpayers or not otherwise brought to the attention of respondent's Appeals office."). Congress has employed the abuse of discretion standard of review in various settings, and in each case, judicial review under that standard has been limited to the administrative record. *See, e.g.,* 5 U.S.C. § 706; 8 U.S.C. § 1160(e)(3)(B); 8 U.S.C. § 1252(b)(4). We think it unlikely that Congress meant anything different here.[4]

The Tax Court seemed to believe that because it traditionally has conducted *de novo* proceedings in deficiency proceedings, and because Congress did not change that practice when it passed the APA in 1946, Congress should likewise be presumed

---

[4]That Congress created jurisdiction in the Tax Court for certain appeals under § 6330(d) means that there is not a duplicate cause of action in a United States District Court under the APA. 5 U.S.C. § 704; *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988). The availability of an adequate remedy in the Tax Court, rather than the district court, however, does not mean that the judicial review provisions of § 706 of the APA are inapplicable in the Tax Court, just as they are not inapplicable when Congress provides for judicial review in the court of appeals rather than the district court. *See Ewing v. Comm'r*, 122 T.C. 32, 61 n.9 (2004) (Halpern and Holmes, JJ., dissenting), *vacated and rev'd on other grounds*, Nos. 04-73237, 04-73699, 2006 WL 463788 (9th Cir. Feb. 28, 2006); *see also, e.g.,* 15 U.S.C. 78y (placing review of Securities and Exchange Commission orders in the Court of Appeals); *D'Alessio v. SEC,* 380 F.3d 112, 120 (2d Cir. 2004) (noting that the APA's judicial review provisions apply to review of SEC orders); *Domestic Sec., Inc. v. SEC*, 333 F.3d 239, 248 (D.C. Cir. 2003) (same).

to have intended *de novo* proceedings in the Tax Court in connection with the review of decisions by an appeals officer under § 6330. We do not think the proposed conclusion follows from the history. Collection due process hearings under § 6330 were newly-created administrative proceedings in 1998, and the statute provided for a corresponding new form of limited judicial review. The nature and purpose of these proceedings are different from deficiency determinations, and it is just as likely that Congress believed judicial review of decisions by appeals officers in this context should be conducted in accordance with traditional principles of administrative law. Indeed, that Congress provided for judicial review in either the Tax Court or a United States District Court, depending on the type of underlying tax liability involved, indicates that traditional principles of administrative law should apply. Every district court to consider an appeal under § 6330 has limited its review to the record created before the agency, *see Olsen*, 414 F.3d at 154 n.9, and it would be anomalous to conclude that Congress intended in § 6330(d) to create disparate forms of judicial review depending on which court was reviewing the decision of an IRS appeals officer in a collection due process proceeding.[5]

That the collection due process hearings are informal does not suggest that the scope of judicial review should exceed the record created before the agency. "Agencies typically compile records in the course of informal agency action," and "[t]he APA specifically contemplates judicial review on the basis of the agency record compiled in the course of informal agency action in which a hearing has not occurred." *Fla. Power & Light Co. v. Lorion,* 470 U.S. 729, 744 (1985). We thus find unpersuasive Robinette's reliance on *O'Dwyer v. Commissioner*, 266 F.2d 575

---

[5]Nor are we persuaded by Robinette's reliance on the Tax Court's decision in *Nappi v. Commissioner*, 58 T.C. 282, 284 (1972), which held that the APA does not apply to judicial review by the Tax Court because it is not an "agency" of the government. *Id*. at 284. *Nappi* focused erroneously on the status of the reviewing court, rather than on the status of the administrative body rendering the decision under review. The Internal Revenue Service, of course, is an agency of the government, and review of its decisions may be governed by the APA.

(4th Cir. 1959), which was premised on a now-outmoded understanding that informal agency action cannot be reviewed based on an administrative record. *Id*. at 580. Of course, where a record created in informal proceedings does not adequately disclose the basis for the agency's decision, then it may be appropriate for the reviewing court to receive evidence concerning what happened during the agency proceedings. *Citizens to Pres. Overton Park v. Volpe*, 401 U.S. 402, 420 (1971). The evidentiary proceeding in those circumstances, however, is not a *de novo* trial, but rather is limited to the receipt of testimony or evidence explaining the reasoning behind the agency's decision. *Camp*, 411 U.S. at 143.

Robinette asserts that the record created by the appeals officer here was inadequate to permit judicial review, but he points to no specific deficiencies. The appeals officer examined Robinette's file and obtained relevant documents, including the original compromise and the letters sent by the IRS. He also kept a log detailing the dates and times of contact with the taxpayer's representative, along with brief notes about the subjects discussed in those conversations, and wrote a memorandum explaining his reasons for recommending the levy. The Tax Court supplemented this record with testimony from the appeals officer that further elucidated his rationale. This record is sufficient to permit a determination whether the appeals officer abused his discretion. We will therefore limit our review to that information which was before the IRS. *See Olsen*, 414 F.3d at 155 (finding adequate a record that contained, *inter alia*, an original offer-in-compromise, the IRS's communications and the taxpayer's responses, and the appeal's officer's conclusions).

III.

Basing our review on the information that was before the appeals officer, we next consider whether the IRS abused its discretion in proceeding with collection of Robinette's tax liability. The Tax Court believed that the appeals officer "did not have an open mind" to Robinette's arguments, and that he should have independently analyzed whether the offer-in-compromise had been "materially breached." 123 T.C. at 112. We disagree.

The Tax Court cited Arkansas case law and the Restatement of Contracts for the proposition that a party's obligation to perform under a contract is discharged only by a "material breach." 123 T.C. at 108-09.[6] It is generally true that a material failure to perform excuses the other party's obligations under the contract. *See* Restatement (Second) of Contracts § 237 (1981). It is not true, however, that *only* material failures to perform excuse the other party's nonperformance. In fact, material failures merely "operate[] as the non-occurrence of a condition," the condition being the implied-in-law obligation to perform under the contract. *Id.* at cmt. a. Where a condition is not a constructive term of the contract, but an express obligation upon which a party's performance depends, performance subject to that condition "cannot become due unless the condition occurs or non-occurrence is excused." *Id.* § 225(1); *see also* 13 Williston on Contracts § 38:6 (4th ed. 2000). By considering only the "material failure to perform" subset of conditions, therefore, the Tax Court's analysis both reversed and truncated the inquiry: the court should first have inquired whether the requirement that Robinette file a return each year was an express condition on the

---

[6]Notwithstanding its citation of Arkansas authority, it is not clear that the Tax Court applied or relied upon Arkansas law. To the extent that Arkansas law might differ from the contract principles that derive from federal common law, we agree with the parties that federal law governs this case. *See United States v. Kimbell Foods, Inc.,* 440 U.S. 715, 726 (1979).

government's performance, and only reached the materiality of the failure to file, if at all, upon answering the first question in the negative.

It is clear from the text of the offer-in-compromise that Robinette's duty to file a tax return each year was an express condition on the government's agreement to discharge his tax liability. His duty to file, and the consequences of any failure to file, are defined explicitly in the portion of his offer-in-compromise describing the offer's "terms and conditions." Robinette agreed to "comply with all provisions of the Internal Revenue Code relating to filing my/our return." He acknowledged that his liability would not be discharged "until I/we have met all the terms of the offer" and that "[i]f I/we fail to meet any of the terms and conditions of the offer, the offer is in default." These words expressly communicate conditions on the IRS's obligation, and since Robinette did not meet the conditions of the offer, it was not an error of law, or an abuse of discretion, for the appeals officer to uphold the decision of the IRS to default the agreement.

Even express conditions may be excused if they are immaterial to the exchange and if enforcement of the condition would cause "disproportionate forfeiture." Restatement (Second) of Contracts § 229 (1981). Robinette, however, did not raise any argument about the excuse of conditions during his collection due process proceedings. Even if we were to consider the issue, it would not have been unreasonable for the appeals officer to conclude that reinstating Robinette's liability would fall short of causing a "disproportionate forfeiture." Default of the agreement does not result in a forfeiture; it results in nothing more than the reinstatement of a liability that Robinette has admitted he owes, with credit for the amounts already paid. *See United States v. Lane*, 303 F.2d 1, 4 (5th Cir. 1962). We conclude, therefore, that it was not an abuse of discretion for the IRS appeals officer to decline to excuse Robinette's breach of an express condition.

The Tax Court also believed that the appeals officer abused his discretion by not properly weighing the alternatives to collection and failing to "have an open mind

regarding reinstatement." 123 T.C. at 112. We disagree. Although it is not at all clear that the IRS's internal regulations and procedures permit reinstatement of an offer that was properly defaulted, the record reflects that the appeals officer independently investigated that possibility. He was aware, for example, that if the offer had been defaulted in error, he could approach the IRS national office and request that the offer be reinstated. (Tr. at 110). Although he found that the Internal Revenue Manual was "silent" on whether an offer could be reinstated during a § 6330 collection due process hearing, the appeals officer acknowledged that if he found that the return had been timely filed, he could have called the national office to "say this is what we've got. . . . This is what we need to have done." (Tr. at 110, 111). He also determined through consultation with the national office on March 6, 2001, however, that the original offer-in-compromise could not be reinstated unless there had been an error by the IRS in declaring a default. (Appellant's App. at 41).

Whether or not the appeals officer believed that he personally could reinstate an offer-in-compromise, he clearly was aware that reinstatement was permitted in certain circumstances, and he was prepared to recommend reinstatement to the national office if he thought it was warranted. The record shows, however, that the appeals officer found that reinstatement was not appropriate in this case, given that Robinette's return was not timely filed and there was no error in defaulting the original agreement. This exercise of judgment was not an abuse of discretion.

The record shows that the appeals officer also considered collection alternatives beyond reinstatement of the offer. The notes of the appeals officer reflect that he suggested that Robinette could file a new offer-in-compromise at least three times over the course of the collection due process proceedings, and that Robinette's representative indicated that he was working on that possibility. Robinette twice requested, and twice was granted, an additional 30 days to submit a new offer-in-compromise. It was only after Robinette failed to follow up on these alternatives that the appeals officer issued his recommendation that a levy was appropriate.

Robinette contends that he was dissuaded from filing a new offer because the appeals officer told him such an offer probably could not be based on doubt as to liability for the unpaid taxes. Robinette's theory was that because the 1998 return was timely filed, there was no basis for revocation of the original offer-in-compromise, so the liability already had been eliminated by the original compromise. The appeals officer advised Robinette's representative that he did not think an offer based on doubt as to liability would be accepted. (Tr. at 100). Given that the 1998 return was not timely filed, Robinette's theory for doubt as to liability was without merit, and there was no abuse of discretion in the appeals officer's advice, because it merely dissuaded Robinette from making a meritless proposal. There is no evidence that the appeals officer attempted to dissuade Robinette from submitting a new offer altogether, and the administrative record reveals that Robinette did not file *any* offer-in-compromise, based either on doubt as to liability or collectibility.

We find no merit in the contention that the appeals officer abused his discretion by refusing to receive evidence that Robinette sought to offer during the collection due process hearing. Much of the new evidence considered by the Tax Court – tax returns for years other than 1998, a postage meter log, cellular telephone records, credit card records, and calendar entries – are documents that Robinette's representative could have transmitted to the appeals officer during the informal hearing process. There was likewise no barrier to Robinette presenting information from other witnesses in written form or through oral statements by his representative. This evidence, moreover, does not establish the proposition for which Robinette sought to offer it – that the 1998 return was timely filed. The Tax Court itself agreed that the return was not timely filed.

We also believe that the appeals officer did reasonably "balance[] the need for efficient collection of taxes with the legitimate concern of the person that any collection action be no more intrusive than necessary." 26 U.S.C. § 6330(c)(3)(C). His memorandum specifically referred to this balancing test and noted the absence of any acceptable alternative that would be less intrusive than the levy. (Ex. 28-J).

Robinette had been relieved by the original offer-in-compromise of his obligation to pay more than $800,000 in taxes that he owed to the Treasury. In exchange, the compromise included an express condition that Robinette file future tax returns in a timely manner. Robinette then elected to follow a practice of seeking multiple extensions of time and filing his return on the last possible day. As an apparent consequence of this practice, the 1998 return was not timely filed. The appeals officer acted within a reasonable range of discretion by concluding that merely reinstating the original offer, despite Robinette's breach of an express condition of the agreement, was not an acceptable alternative.

The Tax Court's decision was based in part on what we conclude was an erroneous application of administrative law and contract law. As to the balancing of considerations identified by § 6330(c)(3)(C), we believe that given the absence in this record of "taxpayer abuse and unfairness by the IRS," *Living Care*, 411 F.3d at 631, and under the appropriate standard and scope of review, it was inappropriate for the Tax Court to set aside the decision of the IRS appeals officer.

Accordingly, the judgment of the Tax Court is reversed.

_____