T.C. Memo. 2007-294


UNITED STATES TAX COURT


MICHAEL D. CORNWELL AND HILARY J. IKER, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 15013-06L.          Filed September 27, 2007.


Michael D. Cornwell and Hilary J. Iker, pro se.

<u>Michael W. Tan</u>, for respondent.


MEMORANDUM OPINION


COHEN, <u>Judge</u>:  This proceeding was commenced in response to
three Notices of Determination Concerning Collection Action(s).
The issue for decision is whether the settlement officer abused
his discretion in determining the amount of an acceptable offer-
in-compromise (OIC) by including prior overtime earnings in the
calculation of reasonable collection potential (RCP).  Unless

otherwise indicated, all section references are to the Internal Revenue Code, as amended.

## Background

All of the facts have been stipulated, and the stipulated facts are incorporated as our findings by this reference. Petitioners resided in California at the time that their petition was filed. Petitioner Michael D. Cornwell (petitioner) is and for many years has been employed as a legal assistant at a law firm.

For tax years 1994 through 1996, petitioner filed Forms 1040, U.S. Individual Income Tax Return, but failed to pay the amounts shown as tax due on those returns. For 1997 through 2002, petitioners filed joint Federal income tax returns but did not pay the balances due on those returns.

On October 20, 2003, the Internal Revenue Service (IRS) sent to petitioner a Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320, advising petitioner that a Notice of Federal Tax Lien had been filed with respect to his unpaid liabilities for 1994, 1995, and 1996. (The parties' stipulation of facts and respondent's brief erroneously set forth the date as October 20, 2004.)

On October 24, 2003, the IRS sent to petitioners a Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320, advising petitioners that a Notice of Federal Tax Lien had

been filed with respect to their joint unpaid liabilities for 1997 through 2002.

On November 24, 2003, the IRS received from petitioners a Form 12153, Request for Collection Due Process Hearing, signed by petitioners and dated November 19, 2003, with respect to the notices sent October 20 and October 24, 2003.

On July 2, 2004, the IRS sent to petitioner a Final Notice of Intent to Levy and Notice of Your Right to a Hearing, advising petitioner that respondent intended to levy to collect unpaid liabilities for 2002. On July 29, 2004, petitioners filed a Form 12153 with respect to the July 2, 2004, notice. The July 29, 2004, request for hearing included the following paragraph:

> This hearing request may be moot as IRS advises Final Notice of Levy was mistakenly issued. See attached Letter 3212 dated 7/15/04.
>
> HOWEVER, out of caution, we are submitting the hearing request. The basis of the hearing request is that the Final Notice was incorrectly issued as an Offer In Compromise concerning this tax period is and has been pending. A pending OIC prohibits issuance of a levy.

A July 15, 2004, letter to petitioner from the IRS stated:

> We're sorry that we made a mistake in recently sending you a Notice of Intent to Levy and Notice of Your Right to a Hearing, dated July 2, 2004. The letter advised you that we would take collection action if you did not pay the amount of tax you owe or ask for a Collection Due Process (CDP) Hearing within 30 days. Because we do not intend to take levy or seizure action against you at this time, we are rescinding the Notice of Intent to Levy.

By law, you are entitled to only one CDP Hearing under Internal Revenue Code Section 6330 for the unpaid taxes listed in our Notice of Intent to Levy. This letter preserves your right to a future CDP hearing should that become necessary. You don't need to do anything further regarding this request. * * *

* * * * * * *

The law entitles you to a CDP Hearing, but the hearing would take place after the levy or seizure.

The IRS later advised petitioners that the July 15, 2004, letter rescinding the notice of levy was issued in error.

On May 6, 2005, petitioners and respondent's Settlement Officer, Patrick S. Lin (Lin), had a face-to-face meeting to discuss petitioners' hearing requests. During the meeting, petitioners expressed their intent to submit an OIC to settle their respective tax liabilities for 1994 through 2002.

After the face-to-face meeting, on July 27, 2005, petitioners filed two separate OICs. The first offered to compromise petitioner's individual 1994 through 1996 tax liabilities for $4,000. The second offered to compromise petitioners' joint 1997 through 2002 tax liabilities for $16,000. Subsequently, petitioners filed amended OICs and increased the amounts of the offers to: (1) $6,250 for petitioner's separate tax liabilities for 1989, 1993, 1994, 1995, and 1996 and (2) $18,500 for petitioners' 1997 through 2002 joint tax liabilities (for a total offer of $24,750).

On April 21, 2006, Lin sent to petitioners a letter summarizing his work on petitioners' income and expense table for the purpose of calculating the RCP. At that time, based on the information received from petitioners, the RCP was calculated to be $81,456. Lin further informed petitioners that, unless he received an amended OIC offering at least that amount, the OIC would be rejected.

On May 4, 2006, petitioners sent to Lin a letter stating the grounds for their objection to the inclusion of overtime pay in calculating their future income for the purposes of determining the RCP. The letter stated, in bold print, that "My firm has a written policy that overtime is not permitted unless expressly authorized in advance by a supervisor." Petitioner enclosed a copy of an Office Handbook issued May 2004 that supported petitioner's assertion. Petitioners asserted that, pursuant to an enclosed economics publication, it is incorrect for petitioner's overtime pay to be included in their future income calculations, because overtime may not continue in the future. Further, petitioners provided more information related to petitioner wife's employment status and her student debt loan.

On May 19, 2006, Lin sent to petitioners a letter responding to their objection to the inclusion of overtime pay in future income. The letter stated that Lin appreciated petitioner's arguments in objecting to the inclusion of overtime pay in future

income, but he noted that 1 Administration, Internal Revenue Manual (CCH), section 5.5.5.5, at 16,339-7, provides a guideline to compute future income. The cited section provides for adjustments when income is expected to increase or decrease. After considering that overtime pay would result in variable income, Lin decided to average petitioner's most recent 5 years of income to calculate future income. The calculations are set forth below:

| Period | Adjusted Gross Income |
| --- | --- |
| 2001 | $98,315.00 |
| 2002 | 100,392.00 |
| 2003 | 100,203.00 |
| 2004 | 100,297.00 |
| 2005 | 107,024.00 |
| Total | 506,231.00 |
| | |
| Average (annual) | 101,246.20 |
| Average (monthly) | 8,437.18 |

Lin further explained that, based on this revised figure for future income, the RCP was now $56,976. The letter reminded petitioners that Lin would be rejecting their OICs if they did not amend their offer to at least pay the RCP.

In a letter dated May 30, 2006, petitioner mailed the declaration of Dr. Joyce Pickersgill, a forensic economist, to support petitioners' position that overtime pay should be excluded entirely when calculating future income for the purpose of computing the RCP. Petitioner again referred to "a recent change in the overtime pay policy of my employer."

After reviewing the correspondence, Lin made a determination to permit the collection action to proceed. On June 26, 2006, he sent three separate Appeals Case Memorandums, delineating the facts and reasons underlying his decision, for managerial approval. As of that time, petitioners owed approximately $84,000 for the years in issue.

After managerial approval, the Appeals Case Memorandums were incorporated into three separate notices of determination: (1) Notice of determination for levy for 2002 taxes dated July 7, 2006; (2) notice of determination for lien for 1997 through 2002 taxes dated July 14, 2006; and (3) notice of determination for lien for 1994 through 1996 taxes dated July 14, 2006.

After Lin's June 26, 2006, Appeals Case Memorandums and prior to the issuance of the notices of determination, petitioner sent two faxes to Lin. Each fax attached a copy of an email dated July 5, 2006, referring to overtime at the law firm where petitioner was employed. The email stated:

> After assessing the current work load in the firm, it has been determined that no overtime is necessary at this time for support staff.
>
> If something changes in your work load which would require a necessity for overtime, you will need to have approval from your supervisor in advance.

## Discussion

Petitioners invoke our jurisdiction under section 6330(d) to review the three notices of determination described above. (The

petition erroneously alleged that both petitioners appealed all three notices, but only petitioner husband is the recipient of the October 20, 2003, notice of lien and the July 2, 2004, notice of levy and of the determinations relating to those notices.) Their challenge to the notices is that the settlement officer abused his discretion in requiring an increased OIC of their outstanding liabilities.

Petitioners contend, among other things, that the notices of determination sustaining two liens and a levy were an abuse of discretion because the settlement officer failed to consider evidence of "changed circumstances" presented by petitioners before the notices of determination were issued and "in choosing to not further investigate this change of circumstance caused by a new overtime policy change". Respondent contends that the faxes sent in July 2006 merely reiterated the employer's policy in effect in 2004 and that the settlement officer considered that policy in adjusting the amount of an acceptable OIC based on averaging petitioner's earnings for the prior 5 years of his employment.

The review applicable in cases such as this one was stated in Murphy v. Commissioner, 125 T.C. 301, 320 (2005), affd. 469 F.3d 27 (1st Cir. 2006), as follows:

> We do not conduct an independent review of what would be an acceptable offer in compromise. Fowler v. Commissioner, T.C. Memo. 2004-163. The extent of our review is to determine whether the Appeals officer's

> decision to reject the offer in compromise actually submitted by the taxpayer was arbitrary, capricious, or without sound basis in fact or law. <u>Skrizowski v. Commissioner</u>, T.C. Memo. 2004-229; <u>Fowler v. Commissioner</u>, <u>supra</u>; see <u>Woodral v. Commissioner</u>, 112 T.C. 19, 23 (1999).

The proposals presented to Settlement Officer Lin were for less than $25,000 against total liabilities approximating $84,000 as of June 2006. Petitioners' proposals were rejected by the settlement officer, who calculated an acceptable offer by reference to petitioner's actual earning history, in accordance with the Internal Revenue Manual. Petitioners then suggested that overtime pay that had been consistently earned by petitioner should be excluded from the calculation altogether. That suggestion does not appear to be reasonable, because petitioner continued to receive overtime pay notwithstanding his employer's policy. Petitioners never offered any evidence that petitioner's actual earnings were declining as a result of the 2004 or allegedly "new" in 2006 overtime policy.

Petitioners argue that the settlement officer should have conducted a further investigation before sending the notices of determination. Respondent points out that the negotiations over petitioners' long delinquent tax liabilities had gone on for years and that reasonable deadlines had been set and had passed when the notices of determination were sent. See <u>Murphy v. Commissioner</u>, <u>supra</u> at 322-323.

Respondent declined an opportunity at the time for trial to cross-examine petitioner or representatives of his employer about the effect of the allegedly new policy, apparently because respondent maintains the position that nothing may be considered outside of the administrative record made before the settlement officer. Petitioners did not attempt to introduce any evidence concerning the actual effect of the allegedly new policy, which had purportedly been in effect 10 months as of the time set for trial in May 2007 and presumably would have been reflected in petitioner's 2006 or current compensation. Thus we need not decide whether to reconsider our position as to evidence first presented at trial. See Murphy v. Commissioner, supra at 311-312; Robinette v. Commissioner, 123 T.C. 85, 94-101 (2004), revd. 439 F.3d 455 (8th Cir. 2006).

Because petitioners' proposed OIC was not supported by evidence of petitioner's actual current or future earning potential, we cannot conclude that the settlement officer's rejection of their offer was arbitrary, capricious, or without sound basis in fact or law. The settlement officer's computation of what would be acceptable reflected actual earnings that have not been shown to be unreliable as an indicator of future earnings, because the claim that the employer's policy would reduce petitioner's earnings is merely speculation. Petitioners failed to show that the allegedly new overtime policy had an

effect on petitioner's actual earnings and constituted a change of circumstances.  Thus they have not shown that the settlement officer's further investigation would have made a difference.  We cannot conclude that sustaining the liens and the proposed levy was an abuse of discretion.

We have considered the other arguments of the parties.  They are moot, irrelevant, or lacking in merit.

<u>Decision will be entered</u>

<u>for respondent</u>.