TJOFLAT, Circuit Judge,
dissenting:
I dissent from the opinion of the court because a careful review of applicable law reveals that neither the plain language nor the legislative history nor the historical practices of the Tax Court in relation to the innocent spousal relief provision, I.R.C. § 6015(f), indicate Congress’s intent to supplant the scope and standard of review set forth in the Administrative Procedure Act (“APA”). Without citation to any cases other than Ewing/PoHer, the court has succumbed to the charms of circular reasoning and abdicated its reviewing function — that is, the court holds that the Tax Court’s reasoning is correct because the Tax Court provided such reasoning regarding its own scope of review. By condoning the Tax Court’s use of a de novo scope of review, the court undermines the Commissioner’s incentive to decide taxpayer contests fairly and adequately. Thus, I would vacate the Tax Court’s judgment and remand with the instruction that the Tax Court limit its review to the scope of the administrative record.
I.
A.
I begin by stating the obvious: the IRS is an “agency” as defined by the APA, the IRS has made findings of fact in this case, and such findings constitute “agency action.” 5 U.S.C. § 701 (2008) (defining “agency” as an “authority of the Government of the United States”); id. § 706 (providing scope of review of agency actions). As the court recognizes, it is a fundamental tenet of administrative law that a court is “ordinarily limited to con *1279 sideration of the decision of the agency ... and of the evidence on which it was based.” United States v. Carlo Bianchi, 373 U.S. 709, 714-15, 83 S.Ct. 1409, 1413, 10 L.Ed.2d 652 (1963). Pursuant to the APA, in the absence of an exception, a reviewing court must set aside only those agency adjudications that are “arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.” 5 U.S.C. § 706(2)(A); Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971), abrogated on other grounds by Califano v. Sanders, 430 U.S. 99, 105, 97 S.Ct. 980, 984, 51 L.Ed.2d 192 (1977). The court’s review must be “searching and careful,” but “narrow,” because “the court is not empowered to substitute its judgment for that of the agency.” Overton Park, 401 U.S. at 416, 91 S.Ct. at 823.
Further, the scope of this review must extend to, and be limited by, the “whole record” compiled by the agency, id. at 419, 91 S.Ct. at 825, “not some new record made initially in the reviewing court.” Camp v. Pitts, 411 U.S. 138, 142, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973). The reviewing court may obtain additional explanation of the agency decision through affidavits or testimony of the agency officials, but it may not substitute its own facts for those of the agency. Camp, 411 U.S. at 143, 93 S.Ct. at 1244.
Under the APA, in limited circumstances, a reviewing court may conduct a de novo hearing and consider whether an agency’s decisions are “unwarranted by the facts to the extent that the facts are subject to trial de novo.” 5 U.S.C. § 706(2)(F). In 1973, the Supreme Court confined this exception and allowed de novo review of adjudicative decisions in only those situations where the agency used “inadequate ... factfinding procedures.” Overton Park, 401 U.S. at 416, 91 S.Ct. at 823.
Informal agency adjudication — that is, a decision made without a hearing, findings of facts, and other requirements specified in the APA — does not constitute inadequate factfinding sufficient to justify de novo review. See Camp, 411 U.S. at 141-42, 93 S.Ct. at 1243-44 (holding factfinding procedures adequate where agency adjudication was based on review of the administrative record without conducting a formal oral hearing or issuing findings of fact); Pacific Architects & Eng’rs Inc. v. U.S. Dep’t of State, 906 F.2d 1345, 1348 (9th Cir.1990) (holding factfinding procedures adequate where agency provided notice, company stated objections, and agency rejected objections in a statement of decision); Acumenics Research & Tech. v. U.S. Dep’t of Justice, 843 F.2d 800, 804-05 (4th Cir.1988) (same). But of Porter v. Califano, 592 F.2d 770, 782-84 (5th Cir.1979) (holding agency factfinding procedures were inadequate where the officials accused of corruption by the plaintiff played a “pervasive role” in the factfind-ing). The informal factfinding procedures undertaken here were adequate and not subject to this de novo exception because Neal had the opportunity to provide information to the examining agent, discuss her claim with that agent, and respond to the agent’s determination.
B.
In this case, the Tax Court combined a standard and scope of review not contemplated by the APA: an abuse of discretion standard and a de novo scope. Because the innocent spousal relief provision, I.R.C. § 6015, was enacted after the APA, the judicial review provisions of APA § 706 may be modified or superseded only if section 6015 does so “expressly.” 5 U.S.C. § 559. The Supreme Court has explained that exemptions from the APA are not to be lightly presumed and must be clear. Dickinson v. Zurko, 527 U.S. 150, 155, 119 *1280 S.Ct. 1816, 1819, 144 L.Ed.2d 143 (1999); Marcello v. Bonds, 349 U.S. 302, 310, 75 S.Ct. 757, 762, 99 L.Ed. 1107 (1955). There are no “magical passwords” that signify an exemption, and even the presence of terms like “clearly erroneous” and “substantial evidence” do not conclusively indicate departure from the abuse of discretion standard. Dickinson, 527 U.S. at 156, 119 S.Ct. at 1819 (explaining that the “relevant linguistic conventions were less firmly established before the APA’s adoption than they are today”); Marcello, 349 U.S. at 310, 75 S.Ct. at 762.
We consider the express terms of the statute and then the legislative history in prescribing the appropriate standard and scope of review. See Marcello, 349 U.S. at 310, 75 S.Ct. at 762 (holding that the “laborious adaptation” of the APA procedures to deportation proceedings and related legislative history supported exemption from APA); Carlo Bianchi, 373 U.S. at 714, 83 S.Ct. at 1413 (concluding, based on a review of the statute and its legislative history, that review of Wunderlich Act decisions must be made on the administrative record). Neither the plain language of section 6015(e) or (f) nor its legislative history explicitly address the standard or scope of review.
The court, relying on the Ewing/Porter majority, argues that, in the Internal Revenue Code, the scope of review is identified on the face of the statute by the operative term “determine,” ante at 1274. Ewing v. Comm’r, 122 T.C. 32, 37, 2004 WL 158177 (2004), rev’d on other grounds, 439 F.3d 1009, 1014 (9th Cir.2006); Porter v. Comm’r, 130 T.C. No. 10, 2008 WL 2065189, at *2-3 (2008). I do not dispute the fact that the Tax Court has on numerous occasions conducted de novo hearings to “determine” certain issues. However, I am unconvinced by this argument.
First, we must remain cognizant of the fundamental canon of statutory construction that, “unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning.” Perrin v. United States, 444 U.S. 37, 42, 100 S.Ct. 311, 314, 62 L.Ed.2d 199 (1979). The Supreme Court has consistently rejected “narrow common-law definition[s]” of statutory terms in favor of “generic definition[s].” See id. at 49, 100 S.Ct. at 317 (rejecting early common law definition of “bribery” and using the “accepted contemporary meaning” in its interpretation of the Travel Act); Taylor v. United States, 495 U.S. 575, 593, 110 S.Ct. 2143, 2155, 109 L.Ed.2d 607 (1990) (favoring generic meaning of “burglary”); see also Anderson v. Cagle’s, Inc., 488 F.3d 945, 955 (11th Cir.2007) (using broad dictionary definition of “clothes” to interpret Fair Labor Standards Act provision); Walton v. Jamko, Inc., 240 F.3d 1312, 1315 (11th Cir.2001) (using dictionary definition of “disbursements” to interpret bankruptcy provision). The dictionary definition of “determination” is “the settling and ending of a controversy esp. by judicial decision” or “the resolving of a question by argument of reasoning” or, in the legal context, “a final decision by a court or administrative agency.” Webster’s Third New International Dictionary 616 (1993); Black’s Law Dictionary 460 (7th ed.1999). These definitions make no mention of scope or standard of review.
Second, even in the Internal Revenue Code, “determination” and “determine” do not exclusively reference de novo review. Congress has defined “determination” in sections relating to personal holding company taxes, deficiency dividends, and mitigation of errors in tax returns as a “decision by the Tax Court ... which has become final” without reference to the use of a certain scope of review. I.R.C. §§ 547, 860, 1311. Further, though Congress explicitly limited the Tax Court’s review to the administrative *1281 record when declaring retirement benefits, the legislative history of that section is nonetheless replete with the word “determination.” See Tamko Asphalt Prods., Inc. v. Comm’r, 71 T.C. 824, 887, 1979 WL 3886 (1979), aff'd, 658 F.2d 735 (10th Cir.1981) (holding that the Tax Court is limited to the administrative record when declaring retirement benefits); ELR.Rep. No. 94-658, at 244 (1975), reprinted in 1976 U.S.C.C.A.N. 2897, 3139 (“The court is to base its determination upon the reasons provided by the Internal Revenue Service in its notice to the party making the request for a determination.... ”).
The court, citing the Ewing majority, ignores these provisions, stating instead that the Tax Court’s long tradition of conducting de novo trials with the term “determine” in section 6015(e)(1)(A) “suggest[s]” the use of a de novo trial here, ante at 1271-72. Ewing, 122 T.C. at 39. A mere suggestion is not sufficient to override the requirements of the APA. See Marcello, 349 U.S. at 310, 75 S.Ct. at 762 (stating that exemptions from the APA are not to be “presumed lightly”). Congress could have provided the standard and scope of review either in the express terms of section 6015(f) or in the legislative history, but it did not do so. Cf. H.R.Rep. No. 105-599, at 266 (1998), 1998 U.S.C.C.A.N. 288 (Conf. Rep.) (specifying use of de novo review when validity of tax liability is at issue in deciding levies); I.R.C. § 6404(h) (providing the Tax Court with jurisdiction to “determine whether the Secretary’s failure to abate interest ... was an abuse of discretion”). Thus, pursuant to the APA, the Tax Court must revert to the default: an abuse of discretion standard of review limited to the scope of the administrative record. See Ninilchik Traditional Council v. United States, 227 F.3d 1186, 1193 (9th Cir.2000) (rejecting de novo review where such review was not clearly dictated in statute because “§ 706 of the APA functions as a default judicial review standard”); cf. Moon v. American Home Assurance Co., 888 F.2d 86, 89 (11th Cir.1989) (finding, in ERISA action, that limiting de novo review to the record available to the plan administrator is contrary to the concept of de novo review).
II.
The court posits that we should look beyond the text and legislative history of section 6015 and apply the standard and scope of review historically used by the Tax Court, ante at 1273-75. The court’s argument in support of this proposition is obscure at best and unsupported at worst. It appears that the court is contending that: (1) prior to the enactment of the APA, statutory and case law required the Tax Court to review decisions of the Commissioner with an abuse of discretion standard and de novo scope of review; (2) this “additional requirement” of procedure continued via the application of APA § 559; and (3) this combination of standard and scope of review applies to the Tax Court’s review of all Commissioner’s decisions, including those under section 6015(f).
It is true that the enactment of the APA did not “limit or repeal additional requirements” of administrative procedure authorized by statute or by common law, but the prior existence of these additional requirements must be “clear.” 5 U.S.C. § 559; Dickinson, 527 U.S. at 155, 119 S.Ct. at 1819. I begin by summarizing the relevant history of the Tax Court and then explain that, because section 6015 was enacted after the APA, the “additional requirements” exception from the APA does not apply.
A.
Tax law was simple in 1913, the year the Constitution was amended to authorize Congress to “lay and collect taxes on in *1282 come”: the Internal Revenue Code was contained in a mere sixteen pages and authorized a flat one-percent income tax on all corporations and a graduated tax from 1% to 7% on all persons with a net income above $3,000. U.S. Const. Amend. XVI; Pub.L. 63-16, § II, 38 Stat. 166, 168 (1913). If a taxpayer sought to challenge the government’s imposition of taxes, the taxpayer’s only recourse was to pay the disputed amount and then file a refund suit in the Court of Claims or in a federal district court.[22] Harold Dubroff, The United States Tax Court: An Historical Analysis 28 (1979).
Over the next decade, the tax code became a creature of complexity — the Form 1040 and joint returns were introduced, tax rates were raised, and new types of taxes, like the excise tax and excess profits taxes, were added. Recognizing that increasing complication of the tax code correlated with a rise in tax disputes, in 1924, Congress established the Board of Tax Appeals to allow taxpayers to challenge deficiency determinations prior to paying the contested amount. Pub.L. No. 68-176, § 900, 43 Stat. 253, 336-338 (1924); S.Rep. No. 68-398, at 8 (1924) (“The right of appeal after payment of the tax is an incomplete remedy, and does little to remove the hardship occasioned by an incorrect assessment.”).
The Board was an independent agency in the executive branch of government and limited to hearing appeals of “deficiency determinations.” Id. Congress defined a deficiency as occurring when the amount imposed by the Internal Revenue Code exceeded the amount shown on the individual or corporation’s tax return. Pub.L. No. 68-176, § 273, 43 Stat. 253, 297 (1924). Though not a judicial body, the Board, on appeals of such determinations, was authorized to hear cases, administer oaths, and examine and subpoena witnesses. Id. At the same time, Congress intended that an appeal before the Board would be a “flexible and informal procedure” so that cases would be determined expeditiously. S.Rep. No. 68-398, at 9 (1924).
In appeals to the Board, the Commissioner’s deficiency determinations were deemed presumptively correct, and the taxpayer had the burden of proving that the ruling was erroneous or arbitrary. Helvering v. Taylor, 293 U.S. 507, 515, 55 S.Ct. 287, 291, 79 L.Ed. 623 (1935); Welch v. Helvering, 290 U.S. 111, 115, 54 S.Ct. 8, 9, 78 L.Ed. 212 (1933). If the Board’s decision was appealed to a trial court, the findings of the Board were to be considered prima facie evidence in favor of the Board’s conclusion. Pub.L. No. 68-176, § 273, 43 Stat. 253, 297 (1924).
Congress expanded the Board’s jurisdiction in 1926 to determine overpayment of taxes and again in 1942 to determine refunds of processing taxes. Revenue Act of 1926, Pub.L. No. 69-20, § 284(a), 44 Stat. 9 (1926); Revenue Act of 1942, Pub.L. No. 77-753, § 510, 56 Stat. 798, 967 (1942). Congress changed the name of the Board of Tax Appeals to the “Tax Court of the United States” in 1942, but it retained the Board’s status as an executive agency. Revenue Act of 1942, Pub.L. No. 77-753, § 504, 56 Stat. 798, 957 (1942).
Four years later, Congress enacted the APA to govern procedure relating to administrative agencies. Administrative Procedure Act, Pub.L. No. 79-324, § 1, 60 Stat. 237 (1946) (currently codified at 5 U.S.C. § 551). It was, as the Supreme Court has noted, a “legislative enactment *1283 which settled ‘long-continued and hard-fought contentions, and enacts a formula upon which opposing social and political forces have come to rest.’ ” Vermont Yankee Nuclear Power Corp. v. Nat’l Resources Defense Council, Inc., 435 U.S. 519, 523, 98 S.Ct. 1197, 1201, 55 L.Ed.2d 460 (1978). In the legislative history, Congress specifically exempted the “tax functions of the Internal Revenue Service” from formal adjudications that require notice, a hearing, and creation of a record because they are “matter[s] subject to a subsequent trial of the law and the facts de novo in any court.” S.Rep. No. 79-752, at 221 (1945), reprinted in Administrative Procedure Act Legislative History at 221 (1944-1946); Administrative Procedure Act, 5 U.S.C. § 1005(1) (1946) (currently codified at 5 U.S.C. § 554(a)(1) (2008)). This exemption from formal adjudication was deemed appropriate because the agency’s judgment would be effective “only in a prima facie sense at most,” as the aggrieved party would be entitled to judicial retrial in the Tax Court. S.Rep. No. 79-752, at 202, reprinted in Administrative Procedure Act Legislative History at 202.
Relatedly, a reviewing court could go beyond arbitrary and capricious review, and reverse an agency decision if it was “unwarranted by the facts so far as the [facts] are subject to trial de novo.” APA § 10 (currently codified at 5 U.S.C. § 706(2)(F)); see also part I.A., supra, (discussing current interpretation of de novo review). In the 1946 APA legislative history, Congress explained that facts would be subject to trial de novo if formal adjudication or rule-making were not required in the organic act or if there had been no administrative hearing that was adequate and exclusive for purposes of factual review. Congress explained that IRS decisions met this latter reason: “[W]here adjudications such as tax assessments are not made upon an administrative hearing and record, contests may involve a trial of the facts in the Tax Court or the United States district courts.” S.Rep. No. 79-752, at 214 (1945), reprinted in Administrative Procedure Act Legislative History at 214.
The Fourth Circuit Court of Appeals amplified this legislative history by holding that the Tax Court was generally not subject to the requirements of the APA. O’Dwyer v. Comm’r, 266 F.2d 575, 580 (4th Cir.1959). The O’Dwyer taxpayer sought to compel the Commissioner to produce the entire administrative record based upon the language in the APA directing the reviewing court to consider the “whole record.” Id. at 579. The court concluded that, because the formal adjudication provisions did not apply to IRS proceedings, the Commissioner was not required to compile a record, and, therefore, the Tax Court was not a “reviewing court” that must consider the “whole record.” Id. at 580. Though removing the Tax Court from the ambit of the APA, the Fourth Circuit confirmed that, upon appeal to the Tax Court, the Commissioner’s assessment was presumed to be correct and the burden was upon the taxpayer to show that the Commissioner’s determination was erroneous. Id. at 577.
In 1969, the Tax Court took its present form when Congress established an Article I court of record named the “United States Tax Court” to replace the Tax Court of the United States. Pub.L. 91-172, § 951, 83 Stat. 487, 730 (1969). Congress indicated that it made this change to quell questions regarding the propriety of one agency sitting in judgment of another agency and because the Tax Court only had judicial duties. S.Rep. No. 91-552 (1969), reprinted in 1969 U.S.C.C.A.N. 2027, 2343. The United States Tax Court was a “continuation of the Tax Court of the United States as it existed prior to the date of enactment of the [1969 Revenue Act]” and the change *1284 would have “no effect upon ... jurisdiction.” Id. at 2344.
B.
I do not decide, as the court does, ante at 1273-74, whether this history reveals that Congress clearly imposed an “additional requirement” on the Tax Court to review deficiency determinations, overpay-ments, and refunds of processing taxes, using an abuse of discretion standard and de novo scope. I do not decide this issue because it is not before this court. See Access Now, Inc. v. Southwest Airlines Co., 385 F.3d 1324, 1330 (11th Cir.2004) (“[Evaluating an issue on the merits that has not been raised in the initial brief would undermine the very adversarial nature of our appellate system.”). However, assuming that such an additional requirement existed and continues via the application of APA § 559, it is impermissible to extend this exception from the APA to the review of innocent spouse relief.
The Supreme Court’s holding in Dickinson v. Zurko is instructive. The issue before the Court was whether the Federal Circuit Court of Appeals appropriately reviewed findings of fact made by the Patent and Trademark Office under a clearly erroneous standard, rather than the APA’s abuse of discretion standard. Dickinson, 527 U.S. at 152, 119 S.Ct. at 1818. The respondents contended that, prior to the enactment of the APA, patent determinations had been reviewed using the clearly erroneous standard and this additional requirement continued pursuant to APA § 559. In re Zurko, 142 F.3d 1447, 1459 (Fed.Cir.1998). The Supreme Court stated that the respondents
must show more than a possibility of a heightened standard [prior to the enactment of the APA], and indeed more than even a bare preponderance of evidence in their favor. Existence of the additional requirement must be clear.
Dickinson, 527 U.S. at 154-55, 119 S.Ct. at 1819. Permitting departure from the APA based on an ambiguous historical requirement in previous case law would frustrate the purpose of the APA to bring “uniformity to a field full of variation and diversity.” Id. After analyzing 89 pre-APA decisions reviewing findings of fact of the Patent Office, the Court found ambiguity because most of them used a “manifest error” or “clearly wrong” standard rather than a “clearly erroneous” standard. Id. at 156, 119 S.Ct. at 1820. Thus, the Court reversed the Federal Circuit and held that the APA’s abuse of discretion standard should be applied.
In Dickinson, unlike the case at hand, no new statute had been introduced that led to the Supreme Court’s review; the Federal Circuit sought to review findings of fact of patent and trademark applications in 1998 and the courts had authority to review such findings of fact in 1946. Id. at 154, 119 S.Ct. at 1819; see also United Transp. Union v. Interstate Commerce Comm’n, 52 F.3d 1074, 1080 n. 10 (D.C.Cir.1995) (finding declaratory orders relating to Interstate Commerce Act to be an “additional requirement” where the Commission had been using such orders prior to the APA and the Supreme Court had assumed the practice to be proper). On the other hand, here, the Tax Court was granted jurisdiction over a new type of relief in 1998. As discussed in part I, because the innocent spousal relief provision was enacted subsequent to the APA, an exemption from the requirements of the APA must be shown clearly via the text of the statute and the legislative history. In other words, we should not even reach the point of analysis reached by the Dickinson Court, because the statute at issue was not part of the Internal Revenue Code when the APA was enacted.
*1285 The court argues that the steps of review presented in Dickinson are irrelevant because “§ 6015 was enacted ‘as part and parcel of and with similar language to, the statutory framework of deficiency determinations.” Ante at 1275-76 n. 17. The court gives no guidance to determine whether a statute or part of a statute is “part and parcel of’ another. Nor has the court addressed why the innocent spousal relief provision is part and parcel of the deficiency framework. Indeed, in this case, the innocent spousal relief provision is being used in a collection case — proving that the innocent spousal relief provision is not necessarily tied to the deficiency procedures. Even if the “part and parcel” criterion could provide a rational or admin-istrable test for discerning exceptions to APA § 559, the most I can concede here is that § 6015 is “part and parcel” of the Internal Revenue Code as a whole. Surely, the court could not have intended to exempt any amendment to the tax code from APA § 559; yet that is the logical conclusion of the court’s tortured and unsupported analysis. At worst, the analysis presented by the court seems to authorize use of the APA § 559 exception in all statutes, without regard to whether the provision at issue was enacted before or after the APA.
Even if I blind myself to the inapplicability of the “additional requirements” exemption, I find no clear indication that a de novo scope of review should be used in innocent spousal relief determinations. There is no pre-APA indication as to the standard or scope of review to be used in conjunction with decisions not involving deficiency determinations, overpayments, or refunds of processing taxes because such decisions would have been moot or not ripe for adjudication. I also find unpersuasive the Ewing/Porter majority’s and Neal’s reliance on O’Dwyer, 266 F.2d at 580, because the Fourth Circuit’s decision was premised on the now-defunct notion that informal agency action need not be reviewed on the administrative record. See part I.A, supra; Camp, 411 U.S. at 142, 93 S.Ct. at 1244.
Confronted with the same combination of standard and scope of review argued here, our sister circuit held that review of collection due process cases should be limited to the administrative record. Robinette v. Comm’r, 439 F.3d 455, 461 (8th Cir.2006). The Robinette court explained that, when Congress authorized judicial review of collection determinations to the Tax Court in 1998, the “nature and purpose” of those proceedings were different from deficiency determinations and it was “just as likely” that Congress intended traditional principles of administrative law be used. Id. The Tax Court’s own decisions in collection due process cases belie the Ewing/Porter majority’s contention that the record rule does not apply to the Tax Court. Giamelli v. Comm’r, 129 T.C. 107, 115, 2007 WL 3170471 (2007) (holding that collection proceedings reviewed under an abuse of discretion standard must be limited to the issues raised before Appeals); Magana v. Comm’r, 118 T.C. 488, 493, 2002 WL 1150745 (2002) (same). The court avoids the reasoning of the Robinette court upon the basis that the statutes at issue are different, ante at 1276. However, the court fails to recognize that here, as in Robinette, the Commissioner seeks to collect unpaid taxes from Neal, not assess a deficiency. These collection due process cases bolster the case for limiting the scope of review to the administrative record. To argue, as the court does, that a collection due process case under I.R.C. § 6330 should be treated differently than a collection case under I.R.C. § 6015(f) exalts form over substance.
Indeed, that is the same deficiency found in the court’s argument that limiting review to the administrative record will result in anomalous decisions involving the *1286 same statute. For example, the court posits that, if Taxpayer X seeks equitable relief via section 6015(f) and the IRS fails to issue a final determination within six months, X may directly petition the Tax Court for relief. I.R.C. § 6015(e)(1)(A). In that case, unlike Neal’s situation, the Tax Court will be required to conduct de novo review because the IRS will not have compiled an administrative record.
I disagree that allowing a de novo scope in X’s case but limiting the scope of review to the administrative record in Neal’s case is problematic. The court and Porter/Ewing majority focus erroneously on the status of the court reviewing the decision of the administrative body, rather than the status of the administrative body itself.[23] APA § 706 applies to a court’s review of an “agency action”; where there is no “agency action,” the APA does not apply. 5 U.S.C. § 706. In Neal’s case, there has been agency action; in X’s case, there has been no agency action. To permit the Tax Court to override the agency’s findings of fact undermines the very purpose of the APA:
This sound and clearly expressed purpose [of expediting review of agency decisions] would be frustrated if either side were free to withhold evidence at the administrative level and then to introduce it in a judicial proceeding. Moreover, the consequence of such a procedure would in many instances be a needless duplication of evidentiary hearings and a heavy additional burden in the time and expense required to bring litigation to an end.
Carlo Bianchi, 373 U.S. at 717, 83 S.Ct. at 1415. While both Taxpayer X’s request for relief and Neal’s are premised on section 6015(f), they arise under wholly different procedural circumstances and, accordingly, are reviewed differently.[24]
I do not deny the possibility that Congress may have intended that the Tax Court continue reviewing all matters in which it is granted jurisdiction using an abuse of discretion standard and de novo scope of review. But, a mere possibility is not sufficient to overwhelm Congressional interest in preserving uniformity and fairness in administrative procedure.
III.
All of this leads to a singular conclusion: allowing the Tax Court earte-blanche authority to override the Commissioner using the vehicle of a de novo trial reveals distrust in the Commissioner’s decisions and decimates the Commissioner’s incentive to be impartial and thorough in those *1287 determinations. Congress, in enacting the judicial review provisions of the Administrative Procedure Act, protected this incentive by giving deference to agencies:
In the first instance ... it will be the function of the agency to determine the sufficiency of the evidence upon which it acts-and the proper performance of its public duties will require it to undertake this inquiry in a careful and dispassionate manner.... Judicial review is of utmost importance, but it can be operative in relatively few cases because of the cost and general hazards of litigation .... For that reason the agencies must make the first, primary, and most far-reaching effort to comply with the terms and the spirit of this bill.
S.Rep. No. 79-752, at 216-17 (1945), reprinted in Administrative Procedure Act Legislative History at 217 (1944-1946); see also Overton Park, 401 U.S. at 416, 91 S.Ct. at 823 (“The court is not empowered to substitute its judgment for that of the agency.”).
Today, the court has given the Tax Court the authority to second-guess the Commissioner at its whim, superimposed upon the farce that the Commissioner’s determination is given discretionary weight. Under such a scheme, why should the Commissioner conduct his hearings in a careful and diligent manner? Why bother when the Commissioner knows that his review of the facts and law will be ignored? For that matter, why should taxpayers be required to fund and use the IRS appeals process since any conclusions made by those federal officials will dissipate in the Tax Court like whispers in the wind? I have found no satisfactory answers to these questions. Therefore, I respectfully dissent from the court’s judgment.

. A taxpayer could also seek relief from the Committee on Appeals and Review. But, the Committee was part of the Bureau of Internal Revenue, and the proceedings in the Committee were not public or adversarial and did not permit the introduction of new evidence. Dubroff, supra, at 39.

. This same defect infects Nappi v. Comm’r, 58 T.C. 282, 284, 1972 WL 2538 (1972), in which the Tax Court held that the APA categorically did not apply to the Tax Court because it was an Article I court. The Nappi court conflated the APA provisions for an agency, which were not applicable to the Tax Court after 1969, with the APA requirements for a court reviewing an agency action. See 35 Fed.Reg. 12462 (Aug. 5, 1970) (deleting the Tax Court's public notices, orders, and rules from the Federal Register because the court was "no longer within the purview of the APA”). The appropriate focus should not have been the status of the Tax Court but whether the administrative body seeking review was an agency subject to standards that a reviewing court must use. See 5 U.S.C. § 706.

. I am equally unpersuaded by the citation to § 6015(e)(4), under which the non-requesting spouse may intervene in the Tax Court hearing. There is nothing to suggest that, by allowing intervenors, Congress intended that trials be conducted de novo or that third parties may introduce matters outside the scope of the administrative record. Cf. Vermont Yankee, 435 U.S. at 554-55, 98 S.Ct. at 1217 (upholding Atomic Energy Commission's refusal to consider conservation alternatives introduced by intervenor after the initial decision).