BYBEE, Circuit Judge,
dissenting:
The question presented in this case is one fundamental to administrative law: What is the scope of review—and, concomitantly, the standard of review—of the Tax Court’s review of the Secretary of the *995 Treasury’s decision to deny equitable relief to an innocent spouse? Under 26 U.S.C. § 6015(f), if, “taking into account all the facts and circumstances, it is inequitable to hold [an innocent spouse] liable for any unpaid tax or any deficiencyf,] ... the Secretary may relieve such individual of such liability.” The Tax Court held, and the majority affirms,' that the Tax Court may review the Secretary’s decision by “a de novo standard of review as well as a de novo scope of review.” Porter v. Comm’r (Porter II), 132 T.C. 203, 210 (2009) (en banc); see Maj. Op. at 987 (“[T]he Tax Court properly considered new evidence outside the administrative record____ [and] applied a de novo standard of review. ...”). The Tax Court so concludes, not because the Secretary has failed to consider the administrative record or abused his discretion, but because the Administrative Procedure Act does not apply to the Tax Court’s review of the Secretary’s actions. See Porter v. Comm’r (Porter I), 130 T.C. 115, 117-19 (2008) (en banc) (holding that the APA does not, and never has, applied to the Tax Court’s proceedings).
The question is of more than passing interest. It goes to the heart of the place of the Tax Court in our administrative system. The question has splintered the Tax Court, which has proceeded along three different paths, dragging four circuit courts with them in the process. The Tax Court initially held that it would review the Secretary’s exercise of discretion under § 6015(f) for abuse of discretion. Jonson v. Comm’r, 118 T.C. 106, 125 (2002), aff'd on other grounds, 353 F.3d 1181 (10th Cir.2003). The D.C. and Fifth Circuits confirmed that position. Mitchell v. Comm’r, 292 F.3d 800, 807 (D.C.Cir.2002) (“As the decision whether to grant this equitable relief is committed by its terms to the discretion of the Secretary, the Tax Court and this Court review such a decision for abuse of discretion.”); Cheshire v. Comm’r, 282 F.3d 326, 337-38 (5th Cir. 2002) (reviewing innocent spouse relief under § 6015(c) for clear error by the Tax Court and § 6015(f) for abuse of discretion by the Secretary).
Then, a divided Tax Court changed its mind and held that it would use a de novo scope of review—including trial de novo— but an abuse-of-discretion standard of review. Ewing v. Comm’r (Ewing II), 122 T.C. 32, 43-44 (2004) (en banc) (“[0]ur determination whether petitioner is entitled to equitable relief under section 6015(f) is made in a trial de novo and is not limited to matter [sic] contained in [the Commissioner’s] administrative record, and ... the APA record rule does not apply to section 6015(f) determinations in this Court.”); id. at 50 (Thornton, J., concurring) (“Since its enactment in 1946, the APA has never governed proceedings in this Court (or in its predecessor, the Board of Tax Appeals).”); id. at 71 (Chiechi, J., dissenting) (agreeing with the majority that “the APA [does not] control[] the proceedings”). But see id. at 61 (Halpern, J., dissenting) (“[T]he APA judicial review provisions apply to section 6015(f) cases as well as deficiency cases.”). That position was confirmed by a divided Eleventh Circuit. Comm’r v. Neal, 557 F.3d 1262, 1264 (11th Cir.2009) (“[T]he Tax Court did not err in refusing to limit its consideration to the administrative record and in conducting a trial de novo in this § 6015 case.”); id. at 1287 (Tjoflat, J., dissenting) (“[T]he court has given the Tax Court the authority to second-guess the Commissioner at its whim.”).
Finally, a divided Tax Court changed its mind yet again and decided that it was entitled to both a de novo scope of review and a de novo standard of review. Porter II, 132 T.C. at 206-10 (rejecting an abuse-of-discretion standard in favor of de novo review on an open record); id. at 221 *996 (Gale., J., concurring) (“Given the statute’s failure to specifically address the standard of review, ... the better interpretation of section 6015 is that it provides for a de novo standard of review in all section 6015 cases....”). But see id. at 225 (Wells, J., dissenting) (“[T]he correct standard to use in reviewing section 6015(f) cases in this Court is abuse of discretion.”); id. at 282 (Gustafson, J., dissenting) (defending Tax Court precedent calling for “an abuse-of-discretion standard of review [and] a de novo record scope of review”). The majority confirms this in today’s ruling. Maj. Op. at 982.
The majority’s position not only departs from the D.C., Fifth, and Eleventh Circuits, but also its reasoning is inconsistent with the Eighth Circuit’s decision in Robinette v. Commissioner. 439 F.3d 455, 459-61 (8th Cir.2006) (rejecting the Tax Court’s claim to de novo scope of review in proceedings under 26 U.S.C. § 6330 and concluding that the Commissioner’s decision was subject to abuse of discretion review under APA § 706(2)(A)); see also Keller v. Comm’r, 568 F.3d 710, 718 (9th Cir.2009) (citing Robinette with approval).
I cannot follow the majority in this convoluted path. Because the Tax Court is a “reviewing court” for purposes of the judicial review provisions of the APA, I am persuaded that its scope of review is the administrative record before the IRS, and that the Tax Court can only review the Secretary’s exercise of discretion for an abuse of discretion pursuant to 5 U.S.C. § 706(2)(A). I respectfully dissent.
I. THE APA AND THE TAX COURT
Let us begin with some first principles of administrative law. The Internal Revenue Service (“IRS”), located within the Department of the Treasury, is an “authority of the Government of the United States” and, thus, an “agency” subject to the provisions of the Administrative Procedure Act (“APA”). See 5 U.S.C. § 701(b)(1); see also id. § 551(1). That means that any person “aggrieved” by “final agency action” or “[a]gency action made reviewable by statute,” id. § 704, is “entitled to judicial review ... in a court of the United States,” id. § 702. In general, “[t]he form of proceeding for judicial review is the special statutory review proceeding,” id. § 703, typically found in the agency’s enabling or organic act. A “special statutory review proceeding” is Congress’s instructions for judicial review of an agency’s actions. Such judicial review statutes will frequently identify the reviewing court, confer jurisdiction, provide venue, and waive sovereign immunity; although, any particular organic act may not address each of these elements. See, e.g., 15 U.S.C. § 45(c) (judicial review of Federal Trade Commission cease-and-desist orders). “Special statutory review proceeding” statutes may also specify the scope of review and the standard of review. See, e.g., 30 U.S.C. § 1276(a)(1) (“Any action subject to judicial review under this subsection shall be affirmed unless the court concludes that such action is arbitrary, capricious, or otherwise inconsistent with law.”); id. § 1276(b) (“The court shall hear such petition or complaint solely on the record made before the Secretary. Except as provided in subsection (a) of this section, the findings of the Secretary if supported by substantial evidence on the record considered as a whole, shall be conclusive.”). “[I]n the absence or inadequacy” of such special statutory review provisions, the APA supplies a default “action for judicial review” in a “court of competent jurisdiction.” 5 U.S.C. § 703. See Bowen v. Massachusetts, 487 U.S. 879, 903, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988); ANA Int'l Inc. v. Way, 393 F.3d 886, 890 (9th Cir.2004). There is a strong presumption favoring the availability of judicial review. Abbott Labs. v. Gardner, *997 387 U.S. 136, 140-41, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967); Helgeson v. Bureau of Indian Affairs, 153 F.3d 1000, 1003 (9th Cir.1998).
Unless the special statutory review provided for in the agency’s enabling act specifies a different scope of review, § 706 of the APA supplies both the scope of review and the standard of review. See 5 U.S.C. § 559 (stating that the APA, including its chapter on judicial review, “do[es] not limit or repeal additional requirements imposed by statute or otherwise recognized by law”); Ninilchik Traditional Council v. United States, 227 F.3d 1186, 1194 (9th Cir.2000) (“[Section] 706 of the APA functions as a default judicial review standard.”). Section 706 defines the scope of review as the “whole record” before the agency, while the standard of review depends on the nature of the issue before the court. In most cases, the reviewing court may “hold unlawful and set aside agency action, findings, and conclusions” if they are “arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.” 5 U.S.C. § 706(2)(A). In rare cases, however, a court may set aside agency action if it is “unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.” Id. § 706(2)(F).[1] Except when the reviewing court is authorized to conduct a trial de novo, the court’s review is confined because “[t]he court is not empowered to substitute its judgment for that of the agency.” Citizens to Preserve Overton Park Inc. v. Volpe, 401 U.S. 402, 416, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971).
The question before us is not the scope of our review of the Tax Court, but the scope of review and the standard of review of the Tax Court’s review of the Commissioner’s equitable relief decisions under 26 U.S.C. § 6015(f). Whatever status the Tax Court once enjoyed as the Board of Tax Appeals vis-a-vis the Commissioner, today it is clearly a “court of the United States” for purposes of the APA, 5 U.S.C. § 702, and “the reviewing court” in the first instance, id. § 706, for review of IRS actions.
A. The Constitutional Status of the Tax Court
The status of the Tax Court has shifted over time. Created in 1924 as the Board of Tax Appeals (the “Board”), the Board was an independent agency within the executive branch that heard appeals from IRS deficiency determinations. Revenue Act of 1924, Pub.L. No. 68-176, § 900, 43 Stat. 253, 336-38; Revenue Act of 1926, Pub.L. No. 69-20, §§ 1000-05, 44 Stat. 9, 105-11; see also Harold Dubroff, The United States Tax Court: An Historical Analysis—Part II: Creation of the Board of Tax Appeals—The Revenue Act of 1921, 40 Alb. L.Rev. 7, 53-58 (1976). Thus, the Board was an executive branch agency established to review, through adjudication, the decisions of another executive branch agency. See 5 U.S.C. § 701(b)(1) (“ ‘[Ajgency’ means each authority of the Government of the United States, whether or not it is within or subject to review by another agency....”); Martin v. Occupational Safely & Health Review Comm’n, 499 U.S. 144, 151, 111 S.Ct. 1171, 113 L.Ed.2d 117 (1991) (discussing the “unusual regulatory structure” of “separating] enforcement and rulemaking powers from adjudicative powers, assigning these respective functions to two different administrative authorities”). The Board’s deci *998 sions could be appealed to federal district court, where the court was to assume the correctness of the Board’s decisions. Revenue Act of 1924, Pub.L. No. 68-176, § 900(g), 43 Stat. 253, 337 (“In any proceeding in court ... [or] any suit or proceeding by a taxpayer to recover any amounts paid in pursuance of a decision of the Board, the findings of the Board shall be prima facie evidence of the facts therein stated.”) (emphasis added).
The legal status of the Board was not in doubt: “The Board of Tax Appeals is not a court. It is an executive or administrative board, upon the decision of which the parties are given an opportunity to base a petition for review to the courts after the administrative inquiry of the Board has been had and decided.” Old Colony Trust Co. v. Comm’r, 279 U.S. 716, 725, 49 S.Ct. 499, 73 L.Ed. 918 (1929). Nor was the scope of the Board’s review in question: for deficiency proceedings, its scope of review was “immediate redetermination of the liability” through “a complete hearing de novo.” Phillips v. Comm’r, 283 U.S. 589, 598, 51 S.Ct. 608, 75 L.Ed. 1289 (1931).
In 1942, Congress changed the name of the Board to “The Tax Court of the United States,” although it continued to identify the Tax Court as “an independent agency in the Executive Branch.” Revenue Act of 1942, Pub.L. No. 77-753, § 504, 56 Stat. 798, 957 (1942) (leaving unchanged all other aspects of the Tax Court, e.g., “jurisdiction, powers, and duties”). Once again, the constitutional status of the Tax Court was not in question. The Supreme Court continued to treat the court as an independent executive agency, whose expertise was unquestioned; indeed, “no administrative decisions [were] entitled to higher credit in the courts.” Dobson v. Comm’r, 320 U.S. 489, 498-99, 64 S.Ct. 239, 88 L.Ed. 248 (1943). It was no surprise then, when following the passage of the APA, the Fourth Circuit concluded that “the Tax Court is not subject to the Administrative Procedure Act” because it was not a “reviewing court” under § 706. O’Dwyer v. Comm’r, 266 F.2d 575, 580 (4th Cir.1959).
All of that changed in 1969. In recognition of the Tax Court’s judicial functions, Congress “established, under article I of the Constitution of the United States, a court of record to be known as the United States Tax Court.” 26 U.S.C. § 7441; see also Harold Dubroff, The United States Tax Court: An Historical Analysis—Part IV: The Board Becomes a Court, 41 Alb. L.Rev. 1, 40-51 (1977). This time, the Tax Court’s constitutional status did change. The Supreme Court held in Freytag v. Commissioner that the Tax Court “exercises a portion of the judicial power of the United States ... to the exclusion of any other function.” 501 U.S. 868, 891, 111 S.Ct. 2631, 115 L.Ed.2d 764 (1991); see also Comm’r v. Ewing, 439 F.3d 1009,1012 (9th Cir.2006) (“The Tax Court, like any federal court, is a court of limited jurisdiction.”). The Court found that “[t]he Tax Court’s function and role in the federal judicial scheme closely resemble those of the federal district courts.” 501 U.S. at 891, 111 S.Ct. 2631. In contrast with its former status within the executive branch, the “Tax Court remains independent of the Executive and Legislative Branches.” Id. Accordingly, the courts of appeals may “review [its] decisions ‘in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury,’ ” a “standard of review [that] contrasts with the standard applied [under the APA].” Id. (quoting 26 U.S.C. § 7482(a) and citing 5 U.S.C. § 706(2)(A)).
B. The Tax Court as a “Reviewing Court” Under § 706(2)(A)
Whatever authority the Board of Tax Appeals or the old Tax Court of the United States had as an executive agency to review IRS decisions, the United States Tax *999 Court is now a court that exercises the judicial authority of the United States, and that puts it on a different plane from where it began. Because the IRS is an “agency,” the Tax Court is a “reviewing court” for purposes of the APA, and “a reviewing court must apply the APA’s court/agency review standards in the absence of an exception.” Dickinson v. Zurko, 527 U.S. 150, 154, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999). Or, as we have stated before, “a reviewing court must apply the deferential APA standard in the absence of a stated exception when reviewing federal agency decisions.” Ninilchik, 227 F.3d at 1193. Exceptions to the APA may not be inferred, but must be express: a subsequent statute may not be held to supersede or modify the judicial review provisions of § 706, “ ‘except to the extent that such legislation [does] so expressly.’ ” Dickinson, 527 U.S. at 154-55, 119 S.Ct. 1816 (quoting 5 U.S.C. § 559). We have interpreted this to mean that “challenges to agency actions are subject to the APA’s judicial review standard unless Congress specifies a contrary intent.” Ninilchik, 227 F.3d at 1193 (emphasis added).
In Dickinson, the Supreme Court faced a similar issue head-on. The question was what standard of review the Federal Circuit should use when reviewing findings made by the Patent and Trademark Office (“PTO”). 527 U.S. at 152-54, 119 S.Ct. 1816. The Federal Circuit, claiming that its authority predated the adoption of the APA in 1946, reviewed PTO findings for clear error, see Fed.R.Civ.P. 52(a), as though the PTO were a district court. Dickinson, 527 U.S. at 153-54, 119 S.Ct. 1816. The Supreme Court held, however, that the more deferential standard of 5 U.S.C. § 706(2)(A) governed. Id. at 154-55, 119 S.Ct. 1816. The APA, the Court said, is a “uniform approach to judicial review of administrative action,” and any departure from the APA’s strict guidelines “must be clear.” Id. (citing 5 U.S.C. § 559); see 5 U.S.C. § 559 (“[A]dditional requirements [not contained in the APA must be] imposed by statute or otherwise recognized by law.”); Marcello v. Bonds, 349 U.S. 302, 310, 75 S.Ct. 757, 99 L.Ed. 1107 (1955) (“Exemptions from the terms of the [APA] are not lightly to be presumed in view of the statement in [5 U.S.C. § 559] that modifications must be express.... ”); see also United States v. Carlo Bianchi & Co., 373 U.S. 709, 715, 83 S.Ct. 1409, 10 L.Ed.2d 652 (1963) (“[W]here Congress has simply provided for review, without setting forth the standards to be used or the procedures to be followed, this Court has held that consideration is to be confined to the administrative record and that no de novo proceeding may be held.”). The Supreme Court squarely rejected the notion that anything less than a clear or express statement would suffice to create an exception to the APA. In “a field full of variation and diversity[, i]t would frustrate [the] purpose [of the APA] to permit divergence on the basis of a requirement ‘recognized’ only as ambiguous.” Dickinson, 527 U.S. at 155, 119 S.Ct. 1816; see also II Richard J. Pierce, Jr., Administrative Law Treatise § 11.1 at 772 (2002) (“The majority [in Dickinson ] ... seemed to establish a presumption in favor of uniformity in standards for judicial review of agency actions that can be overcome only by ‘clear’ evidence in support of a departure.”).
In sum, the IRS is an agency for the purposes of the APA. The Tax Court is a “reviewing court,” subject to the scope of review and standard of review provisions of the APA, unless Congress has expressly exempted the Tax Court from such provisions.
II. TAX COURT REVIEW OF EQUITABLE RELIEF UNDER § 6015(f)
The Tax Court claims, and the majority affirms, that it is exempt from following *1000 the APA when it reviews the Commissioner’s innocent spouse rulings. The Tax Court not only claims that it is exempt from the APA’s scope of review in § 706, it claims that it has an unbounded scope of review and no standard of review. As the Tax Court has stated, it will “apply a de novo standard of review as well as a de novo scope of review.” Porter II, 132 T.C. at 210; see also Maj. Op. at 982, 994. That is no “review” at all. The Tax Court is simply deciding for itself, based on a record it will create for itself, whether the taxpayer is entitled to innocent spouse relief. Under the Tax Court’s view, the Commissioner’s decision plays no role in the Tax Court’s decision. See Porter II, 132 T.C. at 229 (Gustafson, J., dissenting) (“[The majority’s] conception denudes th[e Secretary’s] ‘discretion’ of any effect and contradicts the essence of discretion being granted to an agency.”). That is an extraordinary proposition of American administrative law-—-one that cries for clear statutory authorization from Congress. To that question I now turn.
A. Innocent Spouse Relief Under § 6015
As the majority has ably described, an innocent spouse has long had some form of relief, from unpaid or deficient taxes, available under various provisions of the Internal Revenue Code. See Maj. Op. at 981-84. Currently, 26 U.S.C. § 6015 provides two mechanisms for addressing innocent spouse claims. First, “[u]nder procedures prescribed by the Secretary, if ... there is an understatement of tax attributable to erroneous items of one individual filing the joint return,” the “other individual”—ie., the “innocent spouse”—may “establish[] that in signing the return he or she did not know, and had no reason to know, that there was such understatement.” 26 U.S.C. § 6015(b)(1)(B), (C). Where it would be “inequitable” to hold the innocent spouse liable, and the innocent spouse elects the benefits of § 6015, the innocent spouse “shall be relieved of liability for tax.” Id. § 6015(b)(1)(D), (E); see also id. § 6015(c) (providing similar relief for taxpayers who are no longer married or are legally separated or not living together). Upon the filing of a petition for review, the Tax Court has jurisdiction to “determine the appropriate relief’ for any individual “against whom a deficiency has been asserted.” Id. § 6015(e)(1)(A).
Second, § 6015(f) authorizes the Secretary to grant innocent spouse relief where such relief is not available under § 6015(b) or (c). Section 6015(f) reads in its entirety:
Under procedures prescribed by the Secretary, if—
(1) taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or any deficiency (or any portion of either); and
(2) relief is not available to such individual under subsection (b) or (c),
the Secretary may relieve such individual of such liability.
The Tax Court also has jurisdiction “to determine the appropriate relief available” “in the case of an individual who requests equitable relief under subsection (f).” Id. § 6015(e)(1)(A).
I want to begin with a couple of simple observations about the interplay between these two forms of relief. First, the principal procedure for obtaining innocent spouse relief is found in § 6015(b) and (c). That benefit, if the innocent spouse qualifies and elects such relief, is mandatory: The innocent spouse “shall be relieved of liability for tax.” Id. § 6015(b)(1)(E) (emphasis added). This remedy is only available under the conditions specified by Congress in § 6015 and under the regulations or procedures provided by the Secretary, see Treas. Reg. § 1.6015 (2012).
*1001 Second, if the Commissioner has denied innocent spouse relief under § 6015(b) or (c) and imposed a deficiency, the innocent spouse has a remedy in the Tax Court, and the court will review the deficiency under the its long-standing rules for reviewing taxpayer deficiencies. See Clapp v. Comm’r, 875 F.2d 1396, 1403 (9th Cir.1989) (stating that the Tax Court reviews deficiency determinations de novo).
Third, in contrast to relief available under § 6015(b) and (c), § 6015(f) relief is an equitable remedy. Section 6015(b) is titled “Procedures for relief from liability applicable to all joint filers,” while § 6015(f) is simply titled “Equitable relief.” Moreover, the substance of § 6015(f) confirms its equitable nature. See 26 U.S.C. § 6015(f) (“[T]he Secretary may relieve such individual of such liability.” (emphasis added)). “The word ‘may’ customarily connotes discretion.” Jama v. ICE, 543 U.S. 335, 346, 125 S.Ct. 694, 160 L.Ed.2d 708 (2005) (“That connotation is particularly apt where, as here, ‘may’ is used in contraposition to the word ‘shall’.... ”); Fernandez v. Brock, 840 F.2d 622, 632 (9th Cir.1988) (“ ‘May’ is a permissive word, and we will construe it to vest discretionary power absent a clear indication from the context that Congress used the word in a mandatory sense.”). Compare 26 U.S.C. § 6015(b)(1)(E) (“[T]he [innocent spouse] shall be relieved of liability for tax....” (emphasis added)), with 26 U.S.C. § 6015(f) (“[T]he Secretary may relieve [the innocent spouse] of such liability.” (emphasis added)). Section 6015(f) relief may be had when other legal remedies fail, and it may not be had as a matter of right. That makes § 6015(f) an equitable remedy to provide relief when an individual cannot obtain relief under either § 6015(b) or (c). 26 U.S.C. § 6015(e)(1) (referring to “equitable relief under subsection (f)”); Cheshire, 282 F.3d at 338.[2]
Fourth, the exercise of discretion is committed to “the Secretary”—meaning the Secretary of the Treasury—whose de-legee is the Commissioner of the IRS. Treas. Order 150-10 (April 22, 1982) (delegating the Secretary of the Treasury’s authority to administer and enforce the Internal Revenue laws to the Commissioner of Internal Revenue). That is, Congress has both made the grant of innocent spouse relief a matter of equity and committed it to the discretion of the Secretary of the Treasury or his delegee. See Porter II, 132 T.C. at 226-28 (Gustafson, J., dissenting).
B. The Scope and Standard of Review of § 6015(f) Denials
The Tax Court arrived at its present position through a curious and circuitous route. As the majority explains, Maj. Op. at 984-85, under the original scheme, Congress provided for statutory review where the Commissioner denied innocent spouse relief and assessed a deficiency. That is, as originally enacted in 1998, the “Petition for review by Tax Court,” § 6015(e), only *1002 applied to relief denied under § 6015(b) and (c). Comm’r v. Ewing, 439 F.3d at 1012-13. By its terms, § 6015(e) did not authorize the Tax Court to review the Commissioner’s denial of discretionary relief under § 6015(f). Id. at 1013.
Nevertheless, in Ewing v. Comm’r (Ewing I), 118 T.C. 494 (2002) (en banc), the Tax Court decided that it had jurisdiction to hear a taxpayer’s petition from the Commissioner’s refusal to grant innocent spouse relief where no deficiency had been asserted. Id. at 506-07. In a subsequent opinion in the same case, a divided Tax Court further held that it could conduct a trial de novo to hear additional evidence not in the administrative record before the Commissioner, but that it would review the Commissioner’s decision for an abuse of discretion. Ewing II, 122 T.C. at 43-44.
On appeal to our court, we held that the Tax Court did not have jurisdiction to review the Commissioner’s decision under § 6015(f), because its jurisdiction was limited to petitions “when a deficiency has been asserted and the taxpayer has elected relief under [§ 6015(b) or (c) ].” Comm’r v. Ewing, 439 F.3d at 1013. The Eighth Circuit followed suit in Bartman v. Commissioner, 446 F.3d 785, 787-88 (8th Cir. 2006) (“We agree with the Ninth Circuit that the tax court lacks jurisdiction under § 6015(e) unless a deficiency was asserted against the individual petitioning for review.”) After our ruling in Ewing, the Commissioner’s discretion was complete: His decision whether to grant or not grant equitable relief to innocent spouses was not only discretionary, but unreviewable in the Tax Court.
The Tax Court acquiesced in our decision in Ewing and sought a legislative fix. Billings v. Comm’r, 127 T.C. 7, 19-20, 2006 WL 2059399 (2006) (“[UJntil and unless Congress identifies this as a problem and fixes it legislatively by expanding our jurisdiction to review all denials of innocent spouse relief, it is quite possible that the district courts will be the proper forum for review of the Commissioner’s denials of relief in nondeficiency stand-alone cases.”). That same year Congress amended § 6015 to address our decision in Ewing and the Eighth Circuit’s decision in Bartman. Tax Relief and Health Care Act of 2006, Pub.L. No. 109^132, § 408, 120 Stat. 2922, 3061-62. The new amendment added language to § 6015(e). Id. This is the relevant portion of that section, with the language added by the 2006 amendments in italics:
(1) In general.—In the case of an individual against whom a deficiency has been asserted and who elects to have subsection (b) or (c) apply, or in the case of an individual who requests equitable relief under subsection (f)—
(A) In general.—In addition to any other remedy provided by law, the individual may petition the Tax Court (and the Tax Court shall have jurisdiction) to determine the appropriate relief available to the individual under this section....
26 U.S.C. § 6015(e)(1)(A) (emphasis added).
Again, I have a couple of observations. First, this section confirms that innocent spouse relief offered in § 6015(f) is equitable in nature. And, implicitly, it confirms the Secretary’s discretion to grant it by repeating that the relief in question is the “equitable relief under subsection (f).” Second, the language added in 2006 cures the jurisdictional defect we identified in Ewing. It does so in the simplest of ways, by referring to subsection (f) in the general clause, which permits an individual to petition the Tax Court, that “shall have jurisdiction.” 26 U.S.C. § 6015(e)(1)(A). Third, and most importantly, this section, as amended and considered as a whole, says absolutely nothing about the scope of review. In fact, it says nothing about *1003 either the scope of review or the standard of review that the Tax Court should use when reviewing the petition of “an individual who requests equitable relief under subsection (f).” Id. § 6015(e)(1). That is particularly significant after Dickinson because the Supreme Court had made it clear that ambiguous language would not support “divergence” from the APA; that is, any departure from the APA’s scope of review and standard of review “must be clear.” Dickinson, 527 U.S. at 154-55, 119 S.Ct. 1816. Yet § 6015 makes no reference to the scope of review; it does not create a clear exception to the provisions of the APA.
Under the principles of Dickinson and our cases, that should be the end of the matter. Section 6015 falls well short of the “clear” or “express” language required to create an exception to the APA. Section 6015(e) may be considered a “special statutory review” provision for purposes of 5 U.S.C. § 703, but it does nothing more than grant jurisdiction to the Tax Court to review a taxpayer’s innocent spouse claim. Section 6015(e), having failed to supply its own scope of review or to except Tax Court review from the APA, review of § 6015(f) petitions brought under § 6015(e) is governed, by default, by the APA. Thus, the scope of review for the Tax Court is the “whole record” before the Commissioner, and the standard of review of the Commissioner’s exercise of discretion is the familiar standard, “arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.” 5 U.S.C. § 706(2)(A).[3]
*1004 Nevertheless, the Tax Court held, following the 2006 amendment expanding its jurisdiction, that it has even broader review power than any court or legislative body had previously recognized. See Porter II, 132 T.C. at 208 (“Given Congress’s confirmation of our jurisdiction, reconsideration of the standard of review in section 6015(f) cases is warranted.”). Overruling in part its 2004 decision in Ewing II, the Tax Court held that it would “apply a de novo standard of review as well as a de novo scope of review.” Id. at 210. Contrary to the statute (as amended), contrary to Dickinson, and contrary to its prior cases, the Tax Court decided that, henceforth, it would decide equity under § 6015(f) itself.[4]
In order to maintain this practice, the Tax Court will have to demonstrate that Congress clearly exempted the Tax Court from § 706(2)(A) and intended the Tax Court to be governed by § 706(2)(F) when reviewing the Secretary’s denial of equitable relief under 26 U.S.C. § 6015(f).
III. THE TAX COURT AND THE CASE FOR § 706(2) (F) REVIEW
The majority makes two main arguments in support of the Tax Court’s de novo scope of review. First, the majority claims that the use of the word “determine” in § 6015(e) is “plain language,” Maj. Op. at 992, and “suggests a de novo scope of evidentiary review in § 6015(f) cases,” id. at 988. Second, the majority points to the structure of § 6015 to support the same conclusion. Id. at 988-90. I am going to address both points.
A. Statutory Terms Suggesting De Novo Review
The majority’s principal argument is that when Congress authorized the Tax Court “to determine the appropriate relief available to the individual under this section,” it granted the Tax Court the power to decide the matter de novo, and not just de novo review, but trial de novo. Maj. Op. at 987-88 (quoting 26 U.S.C. § 6015(e)(1)); see also Porter II, 132 T.C. at 208 (“The use of the word ‘determine’ suggests that Congress intended us to use a de novo standard of review as well as scope of review.”). That is a lot of weight to put on the word “determine,” and I do not think it can bear it.
1. “Determine”
As an initial observation, Congress knows how to authorize a trial de novo.[5] Similarly, Congress knows the difference between trial de novo and de novo stan *1005 dards of review, and knows how to specifically authorize a de novo standard of review.[6] Where Congress has elected to use the phrase “de novo,” either to refer to the scope of review or the standard of review, the express requirement of 5 U.S.C. § 559 may be satisfied. See Dickinson, 527 U.S. at 154-55, 119 S.Ct. 1816.
On the other hand, the word “determine” is, at best, an ambiguous term, “a woolly verb, its contours left undefined by the statute itself.” Pub. Citizen v. U.S. Dep't of Justice, 491 U.S. 440, 452, 109 5.Ct. 2558, 105 L.Ed.2d 377 (1989). As a matter of common usage, nothing about the word “determine” inherently suggests—much less requires'—that judicial review be had using a de novo scope of review and standard of review.[7] Moreover, if we look at Congress’s use of the word “determine” in other contexts, we will confirm its ambiguous usage. In particular, since Congress has used “determine” in conjunction with the phrase “de novo,” that strongly suggests that the use of the word “determine” or “determination” alone does not suffice to require a de novo scope of review and standard of review.[8]
In one such instance where Congress expressly required that a “de novo determination” be made, the Supreme Court held that meant de novo review and not necessarily a de novo hearing. United States v. Raddatz, 447 U.S. 667, 674, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980). Section 636 of Title 28 authorizes district courts to refer certain pretrial matters to magistrate judges to “hear and determine.” With respect to certain dispositive motions, the magistrate judge proposes findings of fact and recommendations, to which the parties may file objections. Id. § 636(b). The district court “shall make a de novo determination of those portions of the report ... to which objection is made.” 28 U.S.C. § 636(b)(1)(c) (emphasis added). In Raddatz, the Court found it “clear that on these dispositive motions, the statute calls for a de novo determination, not a de novo hearing.” 447 U.S. at 674, 100 S.Ct. 2406. It explained that Congress’s use of the phrase “de novo determination” did not require a judge to “rehear the contested testimony in order to carry out the statutory command to make the required ‘determination.’ ” Id. In support of its interpretation, the Supreme Court looked to the legislative history, where Congress explained its use of the phrase “de novo determination”:
The use of the words ‘de novo determination’ is not intended to require the judge to actually conduct a new hearing on contested issues. Normally, the judge, on application, will consider the record which has been developed before the magistrate and make his own determination on the basis of that record, without being bound to adopt the find *1006 ings and conclusions of the magistrate. In some specific instances, however, it may be necessary for the judge to modify or reject the findings of the magistrate, to take additional evidence, recall witnesses, or recommit the matter to the magistrate for further proceedings.
Id. at 675, 100 S.Ct. 2406 (quoting H.R.Rep. No. 94-1609, at 3 (1976), 1976 U.S.C.C.A.N. 6162, 6163). Thus, “[t]he legislative history discloses that Congress purposefully used the word determination rather than hearing,” thereby “providing for a ‘de novo determination’ rather than de novo hearing.” Id. at 676, 100 S.Ct. 2406.
The obvious lesson from Raddatz is that even the term “de novo determination” is not “plain text,” but requires consideration of its context and its legislative history in order to understand it. But we should also take away that the word “determine” does not self-evidently mean “determine de novo.” And, even if we thought it might, it does not tell us whether the de novo determination refers to the standard of review or the scope of review. In our case, we do not have the interpretive tools that the Court had available in Raddatz. Congress did not modify “determine” with the words “de novo,” and it offered us no legislative history to illuminate the meaning of “determine” in § 6015(e). That word is simply too ambiguous to authorize the wholesale expansion of the review power claimed by the Tax Court.
Moreover, the context in Raddatz—a district court reviewing a magistrate judge’s findings and recommendations— was a far more compelling case for de novo review of some kind than the context of a court reviewing an executive agency’s decision.[9] As the Court explained in Florida Power & Light Co. v. Lorion:
If the record before the agency does not support the agency action, if the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation. The reviewing court is not generally empowered to conduct a de novo inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry.
470 U.S. 729, 744, 105 S.Ct. 1598, 84 L.Ed.2d 643 (1985) (emphasis added). Unless Congress has expressly authorized a trial de novo, only the rarest of circumstances will justify a court reviewing administrative action de novo. See, e.g., Ronald M. Levin, Scope-of-Review Doctrine Restated: An Administrative Law Section *1007 Report, 38 Admin. L.Rev. 239, 273-77 (1986); Nathaniel L. Nathanson, Probing the Mind of the Administrator: Hearing Variations and Standards of Judicial Review Under the Administrative Procedure Act and Other Federal Statutes, 75 Colum. L.Rev. 721, 755 (1975).
2. “Determine” v. “Redetermine”
Alternatively, the Tax Court has relied upon the similarity between the use of “determine” in § 6015(e) and its power to “redetermine” tax deficiencies. Porter I, 130 T.C. at 118-19 (referring to 26 U.S.C. §§ 6213(a) and 6214(a)); see also Maj. Op. at 993-94; Ewing II, 122 T.C. at 38 (“We see no material difference between the words ‘determine’ in section 6015(e) and ‘redetermination’ in section 6213(a).... ”). Although I continue to believe that the term “determine” is ambiguous, I am quite unpersuaded that “determine” and “redetermine” mean the same thing. If anything, the case for “redetermination” meaning some kind of de novo review is much stronger than for the term “determine.” The use of the prefix “re-,” to modify the word “determine,” suggests that something has been, or must be, done again; a definition in closer harmony with a de novo standard. See Webster’s II New Riverside University Dictionary 977 (1984). If anything at all is to be gleaned from this, the fact that Congress used “redetermine” to describe the Tax Court’s review of deficiencies suggests that “determine” must mean something else. It seems to me that the Tax Court has this one exactly backwards.[10]
In Robinette v. Commissioner, the Eighth Circuit faced a related issue. 439 F.3d 455 (8th Cir.2006). There, the Tax Court had invoked its traditional use of “de novo proceedings in deficiency proceedings” to justify a trial de novo in “collection due process hearings” under 26 U.S.C. § 6330. Id. at 459-61. Approaching the issue through the framework of the APA, the Eighth Circuit could not find any connection to the Tax Court’s deficiency jurisdiction. See id. at 461 (“We do not think the proposed conclusion follows from the history. Collection due process hearings under § 6330 were newly-created administrative proceedings in 1998, and the statute provided for a corresponding new form of limited judicial review. The nature and purpose of these proceedings are different from deficiency determinations, and it is just as likely that Congress believed judicial review of decisions by appeals officers in this context should be conducted in accordance with traditional principles of administrative law.”).[11] The Eighth Circuit *1008 held that the Tax Court’s review was governed by § 706. Id. at 459-62. We have since cited Robinette with approval. Keller, 568 F.3d at 718.
3. “Petition” v. “Appeal”
The majority also looked to the Eleventh Circuit’s decision in Neal, where that court ascribed great weight to the difference between the words “petition” and “appeal.” Maj. Op. at 988 (quoting Neal, 557 F.3d at 1265). According to the majority:
Section 6015(e) expressly grants jurisdiction to the Tax Court to “determine the appropriate relief available to the individual.” Section 6015(e) does not say the taxpayer “may appeal” the Commissioner’s § 6015(f) decision to the Tax Court or that the Tax Court may hear an appeal. Rather, § 6015(e) authorizes the taxpayer to seek § 6015(f) relief from the Tax Court.
Maj. Op. at 988 (quoting Neal, 557 F.3d at 1265 (internal citations omitted)); see also Neal, 557 F.3d at 1276 (“Congress’s use of the word ‘determine’ and not ‘appeal’ in § 6015(e)’s jurisdictional grant is significant.”). I am not sure what significance the majority thinks we should draw from the use of the word “petition” instead of “appeal.” Section 6015(e) is actually enti-tied “Petition for review by Tax Court,” thus the subsequent use of the word “petition” must be understood in the context that it is a petition for review.[12] I do not know of any established difference between the use of “petition” and “appeal” that would dictate the standard of review. At least in administrative practice, those terms have been used interchangeably. Many statutes authorizing judicial review of agency action refer to the action initiating statutory review as a “petition.”[13] Others refer to the same action as an “appeal,”[14] and at least one statute authorizes “[a]n appeal,” which must be initiated by filing “a written petition.”[15] The APA refers only to “review” of agency action, without associating either “appeal” or “petition” with such review. Our own rules refer to “appeals” from district courts, Fed. R.App. P. 3, and “petitions for review” from the orders of administrative agencies, Fed. R.App. P. 15(a), but our tradition of designating some parties “appellants” and others “petitioners” appears to flow from tradition enshrined in rule rather than from some intuitive meaning. Thus, there is no legal significance to Congress authorizing a “petition” instead of an “appeal,” and Congress’s choice of the word “petition” in § 6015(e) tells us noth *1009 ing about the scope of review or standard of review.
* }¡: * % # *
In sum, nothing in the text—much less the “plain text”—compels the majority’s analysis. The word “determine” does not tell us what kind of review the Tax Court is authorized to conduct, and in the absence of clear direction from Congress, that means the APA governs its review.
B. Structural Arguments Suggesting De Novo Review
The majority also relies on the structure of § 6015 in support of the proposition that § 6015(e) requires a de novo scope of review and standard of review. Maj. Op. at 988-90. I am going to address each of its points, which I do not think persuasive.
1. “Totality of the Circumstances”
The majority argues that because § 6015(e) requires that the Tax Court “determine the appropriate relief available,” the Tax Court must consider § 6015(f)’s “totality of the circumstances” in the same manner as the Secretary would. Maj. Op. at 988-90 (internal quotations omitted). Thus, the majority states that “ ‘[tjaking into account all the facts and circumstances’ is not possible if the Tax Court can review only the evidence available at the time of the Commissioner’s prior determination.” Maj. Op. at 988 (internal quotations omitted).
With all due respect, this problem is overblown. Athough § 6015(f) requires that the totality of the circumstances be considered, it is specifically directed to the Secretary. It is the Secretary who must “tak[e] into account all the facts and circumstances,” not the Tax Court. 26 U.S.C. § 6015(f). Congress gave the Tax Court no such charge. Instead, the Tax Court possesses the power to review the Secretary’s decisions under § 6015(f), not to independently apply it. See 26 U.S.C. § 6015(e)(1). Here, there is no reason that the Tax Court cannot review the Secretary’s decision based on the administrative record. And that is well suited for abuse-of-discretion review. If the Secretary failed to consider all the facts and circumstances in the record before him, then he has failed to follow Congress’s directions, and he has likely abused his discretion. See, e.g., Astrero v. INS, 104 F.3d 264, 267 (9th Cir.1996) (“[T]his Court may not substitute its sense of what constitutes hardship in a given case unless the Board abused its discretion, by failing to consider all relevant facts bearing upon extreme hardship or to articulate reasons supported by the record for denying suspension of deportation.”).
2. Intervention
The majority is also concerned that application of the record rule would eviscerate the right of a spouse to intervene under § 6015(e)(4). Maj. Op. at 989 (“By ‘expressly providing for intervenors in section 6015(f) ... cases ... Congress contemplated a new record made initially in the reviewing court.’ Moreover, the right to intervene provided by § 6015(e)(4) would be eviscerated without the ability to present new evidence.”) (quoting Porter II, 132 T.C. at 220 (Gale, J., concurring)) (internal citation omitted); see Ewing II, 122 T.C. at 43. The right to intervene in a petition for review cannot dictate the standard of review, and nothing in § 6015 gives the intervenor the right to proffer additional evidence.
Like the Tax Court, our rules provide for intervention in a “petition for review” of an agency order. Fed. R.App. P. 15(d). Under the APA, we must review the whole record, 5 U.S.C. § 706(2), which is the record before the administrative agency, and we will review extra-record materials *1010 under limited circumstances. City of Las Vegas v. FAA, 570 F.3d 1109, 1116 (9th Cir.2009) (“Courts may review such extra-record materials only when: (1) it is necessary to determine whether the agency has considered all relevant factors and explained its decision, (2) the agency has relied on documents not in the record, (3) supplementing the record is necessary to explain technical terms or complex subject matter, or (4) plaintiffs make a showing of bad faith.”). Intervenors may urge a reviewing court to consult additional materials, but they have no right to expand the record before us by virtue of their intervention. See City of Arlington v. FCC, 668 F.3d 229, 239 (5th Cir.2012) (“[A] party [cannot] rely on her timely intervention with respect to another party’s petition for review to raise matters outside the scope of the other party’s petition.”); Platte River Whooping Crane Critical Habitat Maint. Trust v. FERC, 962 F.2d 27, 37 n. 4 (D.C.Cir.1992) (“[I]ntervenors may only join issue on a matter that has been brought before the court by another party.”) (internal quotation marks omitted). And no one has ever thought that intervention affected our standard of review, much less the scope of our review. See Andersen v. Dist. of Columbia, 877 F.2d 1018, 1025 (D.C.Cir.1989) (“The authority ... to receive new evidence does not transform the review proceedings into a trial de novo.”).
3. Timing and Affirmative Defenses
The majority has also raised the specter of the timing of the petition and the use of § 6015(f) as an affirmative defense as reasons for recognizing de novo review in the Tax Court. Maj. Op. at 989 (“There are two other contexts where a de novo scope of review is not only permitted, but expected. First, when a taxpayer requests § 6015(f) relief but the Commissioner fails to make a determination regarding the request within six months, the taxpayer may petition the Tax Court to render the determination.... The Tax Court also proceeds de novo when confronted with taxpayers who raise relief under § 6015(f) as an affirmative defense in § 6015(b) and § 6015(c) deficiency cases.”); see Ewing II, 122 T.C. at 42. Neither of these supplies a reason for de novo review.
As to the timing of a petition, § 6015(e)(1)(A) provides that a petition for review must be filed within 90 days of the Secretary’s final decision, or within six months after relief has been requested if the Secretary has failed to act. In the latter case, if the Secretary has failed to address a request for innocent spouse relief, the petitioner may argue that the Secretary has unreasonably withheld relief. The APA authorizes a reviewing court to “compel agency acts unlawfully withheld or unreasonably delayed,” but it does not authorize the court to preemptively decide the matter. 5 U.S.C. § 706(1). “[W]hen an agency is compelled by law to act within a certain time period, but the manner of its action is left to the agency’s discretion, a court can compel the agency to act, but has no power to specify what the action must be.” Norton v. S. Utah Wilderness Alliance, 542 U.S. 55, 65, 124 S.Ct. 2373, 159 L.Ed.2d 137 (2004).
As to the question of raising § 6015(f) as an affirmative defense in a deficiency ease, I am not sure I see the problem. Section 6015(f) relief is not the same as relief under § 6015(b) or (c). Both may involve claims related to innocent spouses, but one is a legal remedy for which there is a special review proceeding available in the Tax Court and the other is an equitable remedy committed to the discretion of the Secretary. Thus, contrary to the Tax Court, there is good reason to accept that these matters should not receive “similar treatment and, thus, the same standard of review.” Ewing II, 122 T.C. at 43; see *1011 also Cheshire, 282 F.3d at 338 (distinguishing between the standard of review applicable to each remedy). Section 6015(f) exists precisely because Congress anticipated that relief under § 6015(b) and (c) might not be available. In this context, I cannot see that § 6015(f) is an affirmative defense enforceable by the court in the absence of a decision by the Secretary. If the putative innocent spouse has no defense under § 6015(b) and (c), she must seek relief under § 6015(f) from the Commissioner, not the court.
4. Remand Authority
Finally, the majority states that “[section 6015(e) not only makes no mention of remand, it instructs the Tax Court to proceed de novo when reviewing certain § 6015(f) petitions. Applicable precedent, moreover, restricts the Tax Court from remanding § 6015(f) cases to the Commissioner for further administrative consideration.” Maj. Op. at 989 (citing Friday v. Comm’r, 124 T.C. 220, 222 (2005)). The Tax Court has expressed its concern that it cannot remand such cases to the Secretary as a justification for its de novo review. Porter II, 132 T.C. at 209-10; id. at 220 (Gale, J., concurring); id. at 225 (Wells, J., dissenting).
First, if the problem is Friday, the Tax Court should reconsider its position. Implicitly, the courts have power to remand to administrative agencies, with or without express remand authority. As the Court stated in Florida Power & Light:
If the record before the agency does not support the agency action, if the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation. The reviewing court is not generally empowered to conduct a de novo inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry.
470 U.S. at 744, 105 S.Ct. 1598 (emphasis added); see also INS v. Ventura, 537 U.S. 12, 16-17, 123 S.Ct. 353, 154 L.Ed.2d 272 (2002) (“Generally speaking, a court of appeals should remand a case to an agency for decision of a matter that statutes place primarily in agency hands.”). In particular, the power (and duty) of the courts to remand to administrative agencies when the agency errs in some way—even as to matters of equity—has been a precept of administrative law that antedates the APA. SEC v. Chenery Corp. (Chenery I), 318 U.S. 80, 93, 95, 63 S.Ct. 454, 87 L.Ed. 626 (1943) (“Judged, therefore, as a determination based upon judge-made rules of equity, the Commission’s order cannot be upheld .... The cause should therefore be remanded to the Court of Appeals with directions to remand to the Commission for such further proceedings, not inconsistent with this opinion, as may be appropriate.”).
Second, if the Tax Court does not wish to revisit its opinion in Friday,[16] then it should seek such remand authority from Congress. But, I cannot fathom that the existence vel non of remand authority determines the Tax Court’s scope of review.
IV. CONCLUSION
Even if the text, structure, and legislative history of the statute provide some support for a de novo scope of review and standard of review, this is insufficient to overcome the strong presumption that the *1012 Tax Court is bound to review the Secretary’s exercise of discretion under § 706(2)(A). Congress is free to insert language expressly applying a de novo scope of review and standard of review in § 6015(e). This, however, it has not done. The Tax Court’s actions have rendered the APA meaningless, frustrating Congress’s intent “to bring uniformity to a field full of variation and diversity.” Dickinson, 527 U.S. at 155, 119 S.Ct. 1816.
I respectfully dissent.

. One very obvious example of a reviewing court with the power to conduct a trial de novo is the district courts’ review of Freedom of Information Act claims. See 5 U.S.C. § 552(a)(4)(B) ("[T]he [district] court shall determine the matter de novo, and may examine the contents of such agency records in camera to determine whether such records or any part thereof shall be withheld under any of the exemptions....”).

. Both an innocent spouse's legal remedy under § 6015(b) and her equitable remedy under § 6015(f) depend on a finding that "it is inequitable to hold the other individual liable” for any deficiency or unpaid tax. Compare § 6015(b)(1)(D) (emphasis added), with § 6015(f)(1) (emphasis added). The fact that both remedies use the word "inequitable” does not make them both equitable remedies. Many laws provide remedies to cure inequities; that does not convert them into equitable remedies, at least not as we have long used that term. Equity is a discretionary remedy begun “ 'with a petition asking the king to interfere to secure justice where it would not be secured by the ordinary and existing processes of law.' ” Larry L. Teply & Ralph U. Whitten, Civil Procedure 33 (3d ed.2004) (quoting George Burton Adams, The Origin of English Equity, 16 Colum. L.Rev. 87, 91 (1916)).

. The Tax Court’s review of tax deficiencies has, for largely historical reasons, been held to be de novo. See Porter I, 130 T.C. at 119 (describing the history underlying the Tax Court’s deficiency jurisdiction); see also Clapp, 875 F.2d at 1403 ("The Tax Court has as its purpose the redetermination of deficiencies, through a trial on the merits, following a taxpayer petition. It exercises de novo review.”). There would be nothing inconsistent in permitting the Tax Court to review innocent spouse claims under § 6015(b) and (c) through a trial de novo—-just as other deficiencies are—while limiting the Tax Court's review of equitable relief under § 6015(f) to abuse of discretion.
In Ewing II, Judge Thornton made a strong argument that at the time the APA was passed, Congress intended that the Tax Court would continue using trials de novo when reviewing deficiency claims. 122 T.C. at 50-56 (Thornton, J. concurring). From this history, Judge Thornton concludes that APA § 706 does not govern proceedings in the Tax Court. Id. at 50 (Thornton, J., concurring). I respectfully disagree. As of 1946, when the APA was adopted, the Tax Court was exempt because it was not a court, but an executive branch agency. See O'Dwyer, 266 F.2d at 580 (holding that the predecessor of the current Tax Court was not a "reviewing court” under the APA). Once the Tax Court became an article I court in 1969, however, the APA applied to it as a “reviewing court.” 5 U.S.C. § 706. If Judge Thornton’s argument is correct, that Congress wanted the Tax Court to continue reviewing deficiency claims through trials de novo, that does not mean that the APA does not apply to the Tax Court. It means that § 706(2)(F) governs the Tax Court’s review of deficiencies, rather than § 706(2)(A).
The Tax Court’s historical de novo review of tax deficiencies—which dates to the 1920s— may have been grandfathered under the APA, but that tells us nothing about what the APA says about review of the Secretary’s denial of equitable relief. Moreover, Section 6015(f)— which Congress first provided for in 1998— cannot have been grandfathered under § 706(2)(F) when the APA was adopted in 1946. Thus, innocent spouse relief cases must fall under 5 U.S.C. § 706(2)(A). While the majority effortlessly concludes that § 706(2)(F) applies to all innocent spouse relief cases, Maj. Op. at 989-90, § 706(2)(F) can only be applied in an innocent spouse relief case where "the agency factfinding procedures are inadequate.” Overton Park, 401 U.S. at 415, 91 S.Ct. 814. This inquiry must be done on a case-by-case basis, hewing closely to the Court's admonition that § 706(2)(F) only be applied in rare circumstances. Florida Light & Power, 470 U.S. at 744, 105 S.Ct. 1598; see also Lands Council v. Powell, 395 F.3d 1019, 1030 (9th Cir.2005) ("The scope of *1004 these exceptions permitted by our precedent is constrained, so that the exception does not undermine tire general rule. Were the federal courts routinely or liberally to admit new evidence when reviewing agency decisions, it would be obvious that the federal courts would be proceeding, in effect, de novo rather than with the proper deference to agency processes, expertise, and decision-making.”). The majority eschews this firm command.

. The combination of a de novo scope of review and de novo standard of review ineluctably means that the Tax Court is deciding the question of equitable relief. The decision to review the Secretary on a de novo scope of review effectively determines that the standard of review will also be de novo; a de novo scope of review but an abuse of discretion standard of review are inconsistent. As we have pointed out, "[w]hen a reviewing court considers evidence that was not before the agency, it inevitably leads the reviewing court to substitute its judgment for that of the agency.” Asarco, Inc. v. EPA, 616 F.2d 1153, 1160 (9th Cir.1980). See Neal, 557 F.3d at 1286-87 (Tjoflat, J., dissenting).

. She, e.g„ 5 U.S.C. § 706(2)(F); 5 U.S.C. § 7702(e)(3); 5 U.S.C. § 7703(c); 7 U.S.C. § 499g(c); 7 U.S.C. § 2023(a)(15j; 28 U.S.C. § 657(a), (c); 38 U.S.C. § 7261(c); 42 U.S.C. § 300e-9(d)(3); 42 U.S.C. § 1995; 47 U.S.C. § 504(a).

. See, e.g., 6 U.S.C. § 1142(c)(7); 12 U.S.C. § 1828(c)(7)(A); 12 U.S.C. § 1849(b)(1); 12 U.S.C. § 5567(c)(4)(D)(i); 15 U.S.C. § 2087(b)(4); 15 U.S.C. § 3414(b)(6)(F); 16 U.S.C. § 823b(b), (d)(3)(B); 18 U.S.C. § 1514A(b)(l)(B); 18 U.S.C. § 3613A(b)(l); 18 U.S.C. § 3742(e); 19 U.S.C. § 1625(b); 21 U.S.C. § 399d(b)(4)(A); 22 U.S.C. § 4140(b)(2); 28 U.S.C. § 2265(c)(3); 30 U.S.C. § 1300(j)(4)(ii)(I); 42 U.S.C. § 2282a(c)(3)(B); 42 U.S.C. § 5851(b)(4); 42 U.S.C. § 6303(d)(3)(B); 42 U.S.C. § 8433(d)(3)(B); 49 U.S.C. § 20109(d)(3); 49 U.S.C. § 31105(c).

. The definition of "determine” is: "To decide or settle (e.g., a dispute) authoritatively and conclusively,” or "[t]o end or decide by final, esp. judicial action.” Webster's II New Riverside University Dictionary 369 (1984). Likewise, Black’s Law Dictionary defines a "determination” as: “A final decision by a court or administrative agency.” Black's Law Dictionary 514 (9th ed.2009).

. See, e.g., 18 U.S.C. § 3664(d)(6); 28 U.S.C. § 636(b)(1)(C).

. A magistrate judge is an "adjunct” of an article III district court. N. Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 78-81, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). This means that the full authority to "deal with matters of law” is reserved to an article III court, providing for "the appropriate exercise of the judicial function." Id. at 81, 102 S.Ct. 2858. Thus, a magistrate judge does not usurp the judicial power when properly functioning as an adjunct of an article III court. The Court recognized two significant principles that are important here. First, "it is clear that when Congress creates a substantive federal right, it possesses substantial discretion to prescribe the manner in which that right may be adjudicated....” Id. at 80, 102 S.Ct. 2858. Second, the "functions of the adjunct must be limited in such a way that ‘the essential attributes’ ” of the constitutional power at issue, are retained in the proper branch. Id. So, district court review of a magistrate judge’s determination is not subject to the same separation of powers concerns, because it is only the court’s own judicial power that is being exercised. This is inapposite to the case at hand. The Commissioner is not an "adjunct” of the Tax Court, although the Tax Court’s scope of review and standard of review in innocent spouse relief cases suggest as much.

. Further, any reading of “redetermination” must be informed by the fact that the Tax Court has long had special jurisdiction over deficiencies. That jurisdiction is accounted for in the Tax Court’s jurisdiction over innocent spouse relief available under § 6015(b) and (c). On the other hand, nothing in § 6015(f) requires that a deficiency have been assessed. Section 6015(f) is not limited to relief from a deficiency; it is self-consciously “relief ... not available to such individual under subsection (b) or (c).” § 6015(f)(2) (emphasis added).

. In Porter I, the Tax Court purported to distinguish Robinette based on the fact that § 6330 (at issue in Robinette) does not use the word "determine,” and "the use of the word ‘determine’ [in § 6015(e)] suggests that [the Tax Court should] conduct a trial de novo.” 130 T.C. at 120; see also Neal, 557 F.3d at 1275-76. As discussed above, the mere use of the word "determine” alone is insufficient to satisfy the demands of 5 U.S.C. § 559’s "express” requirement.
Porter I also relied on the fact that under 26 U.S.C. § 6512(b), the Tax Court may "determine” overpayments. 130 T.C. at 119; see also Ewing I, 122 T.C. at 38. At first glance, this appears to be a stronger position, but § 6512(b) is inextricably connected with, and dependent upon, the Tax Court’s jurisdiction to "redetermine” deficiencies. The Tax Court can only make a determination as to an overpayment when the Tax Court has received a *1008 petition for review of a deficiency determination by the Secretary and, during its deficiency "redetermination,” finds that "there is no deficiency and further finds that the taxpayer has made an overpayment of income tax.” 26 U.S.C. § 6512(b)(1).

.Black’s Law Dictionary defines "petition” as: "A formal written request presented to a court or other official body.” Black’s Law Dictionary 1261 (9th ed.2009). Thus, quite literally, a petition for review, in this context, is a formal written request presented to the Tax Court for review of the Secretary’s innocent spouse relief decision. On the other hand, an "appeal” is defined as: "A proceeding undertaken to have a decision reconsidered by a higher authority; esp., the submission of a lower court's or agency's decision to a higher court for review and possible reversal.” Black’s Law Dictionary 112 (9th ed.2009).

. See, e.g„ 7 U.S.C. § 9(1 l)(B)(ii) (Secretary of Agriculture); 8 U.S.C. § 1252(a)(5) (Board of Immigration Appeals); 15 U.S.C. § 45(c), (d) (Federal Trade Commission); 15 U.S.C. § 77i(a) (Securities and Exchange Commission); 29 U.S.C. § 160(f) (National Labor Relations Board).

. See, e.g., 33 U.S.C. § 1319(g)(8) (Environmental Protection Agency); 47 U.S.C. § 402(b) (Federal Communications Commission).

. 27 U.S.C. § 204(h) (providing for review of Treasury’s denial of a federal alcohol permit).

. Ironically, Friday notes that “in our consideration of a request for relief under sec. 6015(f), the standard for review is abuse of discretion.” 124 T.C. at 222 n. 4. The Tax Court did not hesitate to overrule this portion of its holding in Porter II, 132 T.C. at 210.